BONELLI BROS. *v.* FRANK T. BLAKEMORE ET AL.

1. EASEMENT. *Statute of frauds.*
    A right of way is an interest in lands, and a grant by parol is obnoxious to the statute of frauds. This is unlike a dedication of public ways, which is not required to be in writing.

2. RIGHT OF WAY—BY PRESCRIPTION.
    To support a claim of a right of way by prescription, the proof must show an uninterrupted exercise for a period of ten years, this being the time limited by statute in this state for bringing suits to recover land.

3. EFFECT OF WORD, "APPURTENANCES."
    An owner of adjacent lots who exercises the right of passing over one in the use of the other has no easement in the former which is appurtenant to the latter; hence, in a conveyance of the last-mentioned lot, a right of way across the other does not pass by the use of the term "appurtenances" in describing the land.

4. EASEMENT OF NECESSITY. *Implied grant.*
    If one sells land surrounded by other land of the grantor, a right of way across such other land as a necessity is implied from the grant. So, if land is conveyed by designation merely, as "Black-acre," or a "mill," other land not covered by the curtilage or building that by its use has become essential to the enjoyment passes, not strictly by implied grant, but as a part of the thing granted.

5. SAME. *Continuous and non-continuous easement.*
    An easement not of strict necessity does not pass by implied grant, unless it be apparently permanent, obvious, and continuous. A continuous easement is one which may be enjoyed without any act of man, as a water spout

which discharges water whenever it rains. A non-continuous easement is one to the enjoyment of which the act of the party is essential, as a way.

6. SAME. *Case in judgment.*

In this case, although the common owner in the use of one lot exercised his right of ownership in passing across the adjoining one, yet under a conveyance of the first-mentioned lot, a right of way in favor of the vendee over the other is not to be implied from the general grant—the easement claimed not being one of strict necessity, and not being of a continuous nature.

FROM the chancery court of Warren county.

HON. W. R. TRIGG, Chancellor.

Decree for complainants below. Defendants appeal. The opinion states the case.

*Catchings & Dabney,* for appellants.

1. Complainants cannot establish the right of way by parol testimony. If they can, what has become of the statute of frauds, and the doctrine of this court that exceptions will not be engrafted on it? The cases cited with reference to the dedication of public highways have no application. An easement is an interest in *land* and cannot be granted by parol. 2 Wash. on Real Prop. 27 and 28.

2. There is no sufficient proof of adverse holding or use, and certainly not for the length of time required to acquire the interest by limitation. The proof shows continued and adverse holding on the part of *defendants*, and not on the part of complainants.

3. The equitable doctrine that where one sells land to another he impliedly grants a way over his other land, if necessary to have access to the granted land, has no application here, because the granted lot fronts on Washington street and the right of way is not essential or *necessary* to its enjoyment.

4. There is no force in the position of counsel that Emanuel, in the use of lot 93, passed over lot 91 and thereby fixed a servitude on the latter. He was the owner of *both* lots. Besides, the proof is insufficient on this point, and there is no allegation of the fact in the bill.

5. Complainants wholly fail to show any contract right, and they also fail to establish a claim by adverse holding.

If a right of way ever existed, defendants had no notice of it, by record or otherwise, and they are innocent purchasers.

The complainants' testimony shows permissive holding on the part of defendants.

We ask for a reversal and a decree here dismissing the bill.

· *McCabe & Anderson,* for appellees.

1. While Emanuel was the owner of both lots, he burdened number 91 with an easement in favor of 93. This burden, by the use of 91, was open, notorious, visible, and obvious. When he conveyed 93 to Duff, Green & Co., they took it with the easement in the other lot, and this was recognized by all the parties.

Where the owner of land makes one part of it subservient to another by an alteration, which is obvious and permanent, and then conveys one of the parts, his grantee takes such part benefited, or burdened, as the case may be, by the easement which the alteration created. *Kelly* v. *Dunning,* 10 At. Rep. (N. J.) 276.

The usage subsequent to the conveyance by Emanuel and the conduct of all the parties shows conclusively the construction placed on the conveyance, and that the easement existed. *U. S.* v. *Applegate,* 1 Sumner 492.

2. Prior to the purchase by Duff, Green & Co., Emanuel, who was owner of both lots, subtracted an easement from lot 91, which he added to 93. When he conveyed these lots, this fact was open, notorious, visible, and obvious, and was well known to both purchasers.

There was no restriction in the deed to Duff, Green & Co., and they took the easement just as if it had been specified.

Especially is this true, as the purchasers of the other lot knew of the existence of the easement and assented to such a construction of the conveyance.

We, therefore, have an easement by implied grant.

3. If the court is of opinion that there is no written conveyance of the easement in the deeds referred to, then we contend, nevertheless, that the evidence conclusively shows that such a right did exist, and the court, after the great lapse of time, will presume that a written grant was made and has been lost or destroyed.

4. The evidence of a parol easement is overwhelming.

If it is held that there is no written grant, and the court will not presume one, on the *facts* the decree is right any way.

That a deed or writing is not necessary to the creation of a valid easement, see 1 How. (Miss.) 379 ; 55 Miss. 613 ; 2 Wash. R. Prop. 306–319 ; 2 Dill. on Mu. Cor., § 494.

5. If wrong in all these propositions, then we claim that we have shown such possession as the law requires in case of ease-ments, continued for ten years under a claim of right, and that we have acquired a title by prescription.     *Ryan* v. *Ry. Co.*, 62 Miss. 162.

6. Defendants are not innocent purchasers.     The construction of the two buildings, the alley way, the arches, and the absence of doors in the building on the corner lot and other things distinctly visible, were sufficient to have put the parties on inquiry, and con-stituted notice of the easement.     2 Pom. Eq., § 600, note ; *Sandelin* v. *Baxter*, 44 Am. R. 165.


COOPER, J., delivered the opinion of the court.

In the year 1849 one Emanuel became the owner of a part of square 258 in the city of Vicksburg, which square is bounded on the east by Washington street, and on the north by Grove street. His lot fronted on Washington street and extended back one hun-dred and three feet on Grove street.     On this lot he erected two storehouses, each fronting on Washington street and extending back eighty-eight feet, leaving a vacant space in rear of the build-ings of fifteen feet.     The declivity from Washington street westward is so great that what is the basement of the buildings in front is above ground, forming the lower story in rear.     The build-ings are, therefore, three stories in rear, and two stories and a base-ment in front.     One of these buildings extended along Grove street and there was a door in the side opening out on Grove street by which access was had to the lower story or cellar.     This is des-ignated as lot 91 in the pleadings and evidence.     In the rear of the other building (93) there was a door leading from the first floor to the vacant space.     In front there was in each

building a stairway leading to the basement; the two buildings had one common hall. In 1859 Emauuel made contemporaneous conveyances, one to Duff, Green & Co., of lot 93, the other to Cobb, Manlove & Co., of lot 91. The conveyances were of the lots by metes and bounds describing the land on which the respective buildings stood and the vacant space in rear of each, granting to each purchaser the lot and its " appurtenances."

Cobb & Manlove believed that by reason of the situation of the lot conveyed to Duff, Green & Co., its owners had a right of way across lot 91 to reach Grove street, and Duff, Green & Co. being under the same impression exercised the privilege of passing across said lot so long as the two firms occupied the buildings. In 1859 or 1860, each firm, desiring to enlarge its building, the second and third stories were extended back to the rear of the lot, but an archway was cut in the wall of building 91 where the vacant space opened out on Grove street, and a corresponding arch was also cut in the partition wall, the lower story not being extended in either building. Duff, Green & Co. still had access to the first or cellar floor, by driving drays, etc., through the archways to the rear of their building. In 1863 lot 91 was bought by one Barbour, who was examined as a witness and testified that at that time Duff, Green & Co., having engaged in a business that did not require the use of the cellar, made no attempt to use the way across lot 91, and that they set up no claim to a right so to do. Some time after this purchase and occupancy by Barber he built a stable in the alley way on his lot, the arched way on Grove street being used as the doorway to his stable. Things remained in this condition until 1871, when another occupant having moved into lot 93, with whom Barber was not on friendly terms, he closed up the archway in the partition walls by nailing plank across the same. After this, the appellant, Bonelli, became tenant of both buildings and tore out the stable erected by Barber and built another one which was partly on lot 91 and partly on lot 93. Bonelli has now become the owner of lot 91 and has torn down the stable erected on both lots by himself and nailed up the archway in the partition wall. Complainants, who are the owners of lot 93, exhibited the

bill in this cause to enjoin him from obstructing the way which they claim to have across lot 91 to Grove street.

There is no distinct averment in the bill that the way claimed ever was used by Emanuel during his ownership of the property, but since a decision against complainants on this ground would probably result in an amendment of their bill, and since, in any event, they are not entitled to the relief asked, we deal with the cause as though the allegation of such use had been specifically made.

Complainants contend that a right of way exists, first, by implied grant in the conveyance from the common owner to Duff, Green & Co., or if this point be decided against them, then that Duff, Green & Co., under whom they claim, secured the right by parol from Cobb, Manlove & Co., and if mistaken in this, then they claim that the right has been acquired by prescription.

The second and third propositions may be disposed of in a word. A way is an incorporeal hereditament, and since livery of seizin could not have been made of it at common law, it could only be created by deed or other writing; it is therefore said to lie in grant. Greenleaf's Cruise on Real Prop. tit. Deed, ch. 4, §§ 35 and 36.

But a right of way is an interest in lands, and a grant by parol is obnoxious to the statute of frauds. *Thompson* v. *Gregory*, 4 John. 81 ; *Richter* v. *Irvin*, 28 Ind. 27 ; *Hall* v. *McLeod*, 2 Met. (Ky.) 98 ; Kerr on Statute of Frauds, § 718.

The authorities cited by counsel for appellees are cases of dedication of public ways, and rest upon the doctrine of estoppel *in pais*. They are not required to be in writing.

The evidence does not support the claim of a way by prescription. It does not appear that the right was exercised for an uninterrupted period of ten years at any time.

The proposition most confidently advanced by appellees is that the way passed to Duff, Green & Co. either as a part of the land conveyed or as a necessary incident thereto by implied grant, or that it passed by use of the word " appurtenances " in the deed.

The use of the word " appurtenances " adds nothing to the force or effect of the deed. Emanuel was the owner of the whole prop-

·erty, and as owner exercised the right of passing across one part in use of the other; but the right was not an easement appurtenant to the land, for no man can have an easement in his own property. If Emanuel, as owner of this property, had also enjoyed a right to pass over the property of another person, such right would have been an easement, and would have passed by the grant of the property and its appurtenances. But the use of that word proper to convey an easement already existing is not sufficient to evidence a purpose to *create* an easement when none existed before. If by the conveyance to Duff, Green & Co. an easement was granted at all over the other lot, it must be implied from the general grant and not from the use of the word "appurtenances." *Wally* v. *Thompson,* 1 B. & P. 375; *Oliver* v. *Hook,* 47 Md. 301; *Gayetty* v. *Bethune,* 14 Mass. 49; *Parsons* v. *Johnson,* 68 N. Y. 62.

The principle from which the doctrine of implied grants of easements over other lands of the grantor springs is said to be found in the maxim that "one shall not derogate from his grant," and the kindred one that the purchaser takes the land bought, and whatever right in the hands of the grantor as is necessary to its enjoyment.

If one sells to another a tract of land surrounded by other lands of the grantor, a right of way across such other land is a necessity to the enjoyment of the land granted, and is implied from the grant made. And to this extent are all the authorities.

So when a conveyance is made of real estate by designation and not by metes and bounds, as the manor of "A," or as Black-acre, or when property devoted to a trade or business, as a "mill" or "tan-yard," is conveyed by words describing the property as such, other land than that covered by the building or curtilage, that by its use has become essential to the enjoyment or use of the buildings, passes to the grantee. But land cannot be appurtenant to land, and such other lands pass not as appurtenant or incident to thing granted, but as a parcel of the thing itself.

In the case of a way by necessity, it is implied as an incident to the thing granted; when the conveyance is of the land by designation, not by metes and bounds, the connected lands pass, not strictly

by implied grant, but as included as a part of the thing expressly granted. The authorities run in an almost unbroken current in support of the right of the grantee under the above-named circumstances, but some diversity is encountered when we pass into the field of implied grants of things not necessary (strictly necessary), but only highly convenient, or essential to the full enjoyment of the land bought.

The owner of a tract of land, a part of which he afterwards grants to another, has not, of course, any easement in any part of his land while he owns the whole; he deals with it as owner and may subserve any portion to the use of the other, and may change the arrangement at his will; it is only where such arrangement is apparently permanent and intended so to be, and while so remaining the owner grants a part of the premises, that the question of easement or servitude can arise. The condition of the whole when the severance is made, the nature of the easement claimed to be granted or reserved by implication, its obviousness and continuousness, are the tests usually applied to determine the existence or non-existence of the grant or reservation.

The rule seems to be of very general recognition that an easement not of strict necessity does not pass by implied grant, unless it be apparently permanent, obvious, and continuous.

The word continuous in the sense here used seems to have acquired a somewhat unusual significance within the meaning of the rule. It is not sufficient that the thing may be continuously subject to use or enjoyment, but that it may be used without the intervention of the act of man.

A continuous easement is one, say the authorities, which may be enjoyed without any act on his part, as a water spout which discharges the water whenever it rains; a drain by which surface water is carried over land, windows through which light and air enter, etc.

A non-continuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual. *Lampman* v. *Milks*, 21 N. Y. 505; *Poden* v. *Bastard*, Law Rep., 1 Q. B. 156; *Providence Tool Co.* v. *Corliss Steam*

*Co.*, 9 R. I. 564 ; *Elliott* v. *Rhett*, 5 Rich. Law 405 ; *Duston* v. *Ledden*, 23 N. J. Eq. 64 ; note to *Elliott* v. *Rhett*, 57 Am. Dec. 750.

The decided weight of authority, both English and American, is to the effect that an easement, not of strict necessity, will not pass by implied grant, unless it be apparent and continuous. *Whally* v. *Thompson*, 1 Bos. & Pul. 371 ; *Pheysey* v. *Vickery*, 16 W. & M. 484 ; Goddard on Easements 266 *et seq.* ; *Oliver* v. *Hook*, 47 Mo. 302 ; *Fetters* v. *Humphreys*, 19 N. J. Eq. 472, and cases cited above.

In Pennsylvania a way fenced out and devoted exclusively to purposes of travel seems to be treated as a continuous easement. *Phillips* v. *Phillips*, 48 Penn. St. 178 ; and an alley-way, *McCartey* v. *Kitchenum*, 47 Penn. St. 239. It is probable, however, that in that state the decisions go further, and establish the rule that a way, commonly and usually used and highly convenient, would pass by implied grant. *R. R. Co.* v. *Jones*, 50 Penn. St. 417. It was also suggested in *Watts* v. *Kelson*, L. R., 6 Ch. Appeals 186, that a paved road-way might pass by implied grant. In *Appleton* v. *United States*, Judge Story, not adverting to the distinction between continuous and non-continuous easements, held that where a window, opening upon a porch, had been in use as a way by the grantor across the porch to the street, an easement passed by implied grant, not only to light and air, but to the way across the porch. The authorities relied on by him are cases in which continuous easements had been held to pass. It may be noted that the cases cited by him from Massachusetts have been practically overruled in that state by subsequent cases. The law seems to be in that state now that no easement, whether continuous or non-continuous, will pass by implied grant, unless it be one of necessity. *Keats* v. *Hugo*, 115 Mass. 204.

Since the way claimed by complainant is not one of necessity, and is not of a continuous nature, it did not pass by the conveyance to Duff, Green & Co., and, of course, has not been acquired by any of the subsequent conveyances under which complainants derive title. The complainants are, therefore, not entitled to the relief sought, wherefore,

*The decree is reversed and bill dismissed.*