EDWARD WILLS ET AL. *v.* CONSTANTINE H. REED.

1. PRIVATE ROAD. *Neighborhood road. Use by public.*

A neighborhood road, however long it may have been used by the public, does not become a highway, in the absence of an assertion by the public of a right and of all supervision of it by the county road authorities.

2. SAME. *Easement by prescription.*

The owner of land cannot claim an easement by prescription in a neighborhood road over an adjoining tract where his actions have been inconsistent with a hostile, adverse claim thereto on his part. If he has attempted to acquire a private way along the road by contract, and, while making repairs on the road for his own convenience, changed its route to suit existing conditions, and has not given any notice of his asserted right to any one, his claim will be unavailing.

3. SAME. *Right of way of necessity.*

A purchaser of land, generally, does not acquire a way of necessity where the land purchased is not surrounded by other lands of the grantor, however greatly he would be convenienced by so doing; especially is this true where there are highways by which he has ready and convenient ingress and egress to and from the land purchased.

4. SAME. *Bona fide purchaser.*

Purchasers of land, who have no notice, actual or constructive, of a claim of a prior purchaser under an unrecorded bond for title to a way over the land purchased by them, and whose deeds are executed and recorded *before the deed to the prior* purchaser, acquire absolute title to the land purchased by them, unincumbered by an alleged way of necessity for the benefit of the prior purchaser.

5. PRIVATE RIGHT OF WAY. *How obtained. Code 1892, § 3901. Constitution 1890, sec. 110.*

A person having the right to procure passage through the lands of another can enforce that right by a proceeding to have a private right of way established, under Code 1892, § 3901 (enacted in pursuance of Constitution 1890, sec. 110), authorizing the establishment of a private right of way over the land of another when necessary for ingress and egress.

FROM the chancery court of Benton county. .

HON. JULIAN C. WILSON, Chancellor.

Reed, the appellee, was complainant, and Wills and others, the appellants, were defendants in the court below. From a decree in complainant's favor the defendants appealed to the supreme court. The facts are stated in the opinion of the court.

*Smith & Totten,* and *Alexander & Alexander,* for appellants.

Before considering the evidence it is of vital importance to get clearly before us the distinction between a public road and a private right of way; for in the mode by which they are acquired and the manner of and extent of the right to use them, they are widely different. The proof necessary to establish a dedication for a public highway is very different from that required to establish in favor of a single person a right of way. When we have gotten clearly before us the law applicable to this case, it will be made very clear how far short the evidence falls of establishing complainant's bill. See Ency. Law, 1122; Ency. Law, 1210; Ency. Law, 1200.

If the way was a public highway, a private right of way in it could not be acquired by prescription. It cannot be both. If it is a public road, there is no place for a discussion of private rights. 14 Cyc., 1155, 1157, 1156, 1155; 22 Ency. Law, 1198.

The evidence in this case wholly fails to show that the Pott's Mill road was a public highway. There was never any dedication to the public. There was not an acceptance by the public. The public never recognized any obligation to work the road. There is no proof that a single person ever used it unless he was going on business with the mill. A permissive use of an easement cannot become adverse without positive notice to the owner of the servient estate.

*Mayes & Longstreet,* and *McDonald & Gresham,* for appellee.

The appellee in the court below showed the existence of this

right on his part, and showed it from three different sources, any one of which is good:

First—He showed the existence of the right not only in himself, but in all the neighborhood adjacent, by prescription and dedication, by common user for a half a century past; he showed

Secondly—The existence of the road as a way of necessity, arising by law out of the conditions existing when he bought the lands from Mr. J. H. Watson, his vendor, who at that time owned the lands roundabout.

Thirdly—He showed the existence of the right of way by express contract and assent of the said Watson, which, although not recorded, was made good against Watson's subsequent vendees by actual notice to them of the existence of this right.

Truly, J., delivered the opinion of the court.

The bill of complaint herein was filed by appellee, seeking to require appellants to remove all obstructions from, and to reopen, a certain road, denominated in the record a "neighborhood road." The diagram in the record shows that the road in question, traversing certain lands owned by appellants and also lands of the appellee, serves to connect two public roads, and ends at a public road at a point on the railroad called "Reid's Switch." The proof shows that originally this neighborhood road was opened by the owner of all the lands which it traversed for the purpose of enabling his patrons and the public generally to reach his mill, known as "Pott's Mill." This was many years ago—long prior to the construction of the railroad to which the road now runs. Afterwards, when the mill fell into disuse, the use of the road was continued by all those whose business rendered it convenient or necessary, though chiefly made use of by timbermen and cross-tie contractors, who would haul over it to the railroad. Slight changes in the route were made, such as the condition of the road, owing to the hills, the creeks, or the character of the land, made imperative, with occasional repairs which were demanded to render the way passable. In 1889

James H. Watson owned the lands, then consisting entirely of uninclosed woodland, on which that part of the road involved in this controversy ran. In 1889 the said Watson agreed to convey to appellee the southern portion of the lands in question, and executed a bond for title, in which it was recited that the said Watson agreed to "give said Reed a right of way over our other land from said quarter to the railroad." This bond for title was not placed of record for many years, and the deed which was, in the year 1898, executed in pursuance of its conditions contained no grant of any right of way. Subsequent to the execution of the bond for title, but before its recording and before the deed to Reed was executed, Watson sold the other part of the land (the land over which the bond for title to Reed agreed to give a right of way) to the vendors of appellants. The record shows that these appellants were not advised of any claim to a right of way which Reed might have against Watson, and were in ignorance of the recitation in reference thereto in his bond for title. The chancellor, after hearing a great mass of testimony, granted the relief prayed for, and awarded appellee certain damages against one of the appellants. From that decree this appeal is prosecuted.

In a case decided since the filing of the briefs in this case—*Burnley* v. *Mullins, ante* 441 (s.c., 38 South. Rep., 365)—we had occasion to express our conclusions upon a state of facts strikingly similar to the case here presented in several of its phases. In view of the contention that, by reason alone of the great lapse of time during which this neighborhood road has been used, the public had thereby acquired certain rights by prescription, we refer especially to the opinion in that case as conclusive against the position of appellee on that point. In the instant case, as in the Burnley case, there was no assertion of any claim by the public of any hostile right to the way in question. The road was never under the supervision of the board of supervisors or county road authorities, was never

worked by a road overseer, nor were the bridges or causeways on the same built at public expense. As applicable to the facts of this case, and controlling the decision on this point, we quote from the opinion in the Burnley case as follows: "There is nothing in the record to show that this limited, though long-continued, use of the road by a portion of the public had been 'under color of right;' nor does it appear that the privilege of passage exercised by those using the road was 'such as to expose the party asserting such right of way to an action if he wrongfully exercised such right.' And under the *Mastronardi Case,* 76 Miss., 273 (s.c., 24 South. Rep., 199), these two elements must coexist with the continued use of the way, in order for such use to 'ripen into title by prescription.' Therefore, even if it be conceded that 'anything less than the assertion of a claim by the board of supervisors could constitute color of right,' it is evident that, in the absence of the two necessary elements of adverse claim mentioned, the use, no matter how public nor how long continued, could never ripen into an absolute and adverse right. So far as the public is concerned, there was never, in any proper legal sense, the assertion of any hostile right, but simply the enjoyment of a mere permissive right of passage. Being permissive, the property owner whose land was traversed by the way had the power at any time to withdraw his consent and close the road." See also *Warren* v. *Mastronardi,* 76 Miss., 273 (24 South. Rep., 199). It follows from this that the public has no such right of way over the lands in question as would preclude the owner from closing the road at his pleasure.

Nor does it appear to us that the facts of this record sustain the contention that the appellee has acquired any right of way over the lands of appellants by prescription. It must be borne in mind that his first connection with the lands, so far as this record shows, was in 1889, and at that time, as shown by the stipulation in his bond, he not only did not assert that either he or the public had any right of way over the lands or any right vested by prescription in the neighborhood road, but ex-

pressly undertook by contract to acquire, for his sole benefit, a private right of way over the identical lands now in question. The proof shows further that Watson, the owner at that time of all the lands, not only did not recognize the existence of any hostile claim to right of passage over his lands, but was not advised and had never heard of the assertion of such adverse right by the public or by any individual. It is true that, after the execution of the bond for title, appellee made, for his own personal convenience, considerable repairs on some portions of the road, but it is also true that he and all others using the way exercised the privilege of changing the route of the road to suit the conditions of passage which might confront them; and it is likewise true that appellee, before the institution of this suit, fenced up and closed to public passage, except by special permit, some portion of the road crossing the lands which he had acquired from Watson, thus asserting in himself the right to deal with the road in a manner which he now seeks to have denied these appellants. Stating the case on this branch most strongly for appellee, it appears to us that his conduct in the past was inconsistent with his present contention, that he claimed an adverse right of passage for the period necessary to acquire a prescriptive right prior to the institution of this suit. His endeavor to acquire by grant a private right of way, his acceptance of a deed not containing such grant, the failure to place the bond for title of record or to give actual notice of his alleged claim to the parties purchasing the other portion of the lands, his connection, as agent of the owner, with certain of the sales by Watson to the vendors of appellants, in which private rights of way were contracted for, and his own dealings with the neighborhood road, convince us that the hostile claim which he now asserts to this right of way was not made for the length of time, nor in the open, notorious, and adverse manner, required to vest such an easement by prescription. *Lanier* v. *Booth,* 50 Miss., 410; *Bonelli* v. *Blakemore*, 66 Miss., 136 (5 South. Rep., 228; 14 Am. St. Rep., 550).

We are equally unable to adopt the contention urged in this court that appellee is entitled to the use of this road as a "way of necessity," for several reasons. The proof and the diagram do not show that it is a way of necessity. The agreed statement of facts, when considered in connection with the diagram, discloses that the other land owned by appellee, contiguous to the tract purchased from Watson, is itself traversed by one of the public highways of the county, which intersects another such highway, and that by these he has ready and convenient access to the main market—Potts Camp—at which the business of this community is chiefly transacted. It is true that for the purpose of transporting timber, for which these lands seem chiefly to be valuable, it would be a great convenience to appellee to have the neighborhood road in question open, so that thereby, with a shorter haul, he might get his timber to the nearest shipping point upon the railroad. But the personal convenience of one owner is by no means the sole consideration to be dealt with in determining whether one is entitled to a way of necessity, by operation of law, over the lands of another. It is a familiar principle of law that, when one sells land surrounded by other lands of the grantor, a right of way across such other land, as a necessity, is implied from the grant. *Lanier* v. *Booth, supra; Bonelli* v. *Blakemore, supra.* But that is because the existence of such way is necessary to the use and enjoyment of the granted estate, and hence, by operation of law, is included in the grant. But the principle does not control when there exists over the lands of the grantee, or otherwise, an open and convenient way of access to the granted estate. Such additional way of ingress and egress, while perhaps a convenience which might enhance the value of the land, cannot be in any proper legal sense classed as a way of necessity. The land conveyed by Watson to Reed being already connected, through other lands of Reed, with the public highways of the county, no way of necessity over other lands of Watson was implied by the grant. And this was seemingly recognized by Reed and the

other purchasers from Watson, for in the bond for title to Reed, and the deeds to the others, there is an express stipulation that a right of way should be granted to each vendee. Aside from this, and as a final and decisive fact, it should be observed that at the date of the conveyance by Watson to Reed the land granted was not "surrounded by other lands of the grantor." And this circumstance, under the Lanier and Bonelli cases, is a condition precedent to an acquisition by implied grant of a way of necessity.

Again, as already indicated, appellants are purchasers for value without notice, either actual or constructive, of any adverse claim on the part of appellee to any right of way over their lands; and as their deeds were executed and recorded before the deed to appellee, and as Watson, the vendor of appellee, was not at the date of that deed the owner of the lands surrounding those conveyed to Reed, these appellants acquired absolute title to their lands, regardless of the recitals in the Reed bond for title. By no stretch of the rule can there be a conveyance by implied grant of a way of necessity over the lands of third persons.

Conceding that the situation is such that Reed has a legal right to demand a passage through the lands of appellants, he can only procure it by proceeding to have a private way established in accordance with the provisions of Code 1892, § 3901. This section, when surrounding conditions justify, permits the establishment of a private right of way over the lands of another "where necessary for ingress and egress." Upon this point we express no opinion, contenting ourselves with the announcement that the law applicable to the facts of this record does not sustain appellee in his insistence that he is entitled to or has acquired a right of way over the lands of appellants, upon any of the theories presented.

Upon the facts of this record, in view of the previous adjudi-

cations of this court, we find ourselves unable to agree with the conclusion of the chancellor.

*The decree is reversed, and the cause remanded.*