860 So.2d 1227 (2003)
John D. FIKE, Appellant,
v.
James B. SHELTON, III, Appellee.
No. 2002-CA-00668-COA.
Court of Appeals of Mississippi.
October 7, 2003.
*1228 John D. Fike, Pro Se, attorney for appellant.
John Hinton Downey, Jackson, attorney for appellee.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. James B. Shelton, III filed a complaint in the Chancery Court of Hinds County for establishment of an easement. Shelton named John D. Fike, the Hinds County Board of Supervisors and any parties interested in the property formerly owned by Levi Sturgis, Sr. as defendants in the action. Shelton petitioned the chancery court to decree an easement by necessity across the Fike and Sturgis properties or, alternatively, if the court held that Shelton was required to proceed under Mississippi Code Annotated Section 65-7-201 (Supp.2002), that the court order the board of supervisors to construct a private road. Shelton and Fike agreed to a bifurcated hearing in which the court would first rule as to whether Shelton was entitled to an easement. If the court ruled that Shelton was entitled to an easement, the court would then reconvene to decide *1229 the remaining issues of width, nature and location of the easement.
¶ 2. In the first hearing, the chancery court held that Shelton was entitled to an easement by necessity across the Fike and Sturgis properties. At the second hearing, the court ordered that the easement should be fifty feet wide. The ditches, shoulders and width of the road were limited to twenty-five feet with the remaining width to be used for utilities and making repairs. Feeling aggrieved, Fike appeals the following errors to the Court:
I. WHETHER THE AWARD BY THE CHANCELLOR OF AN EASEMENT BY NECESSITY TO APPELLEE WAS IMPROPER AND AN ABUSE OF THE COURT'S DISCRETION AS APPELLANT PROVED APPELLEE HAD ACCESS AND PERMISSION TO USE OTHER AVAILABLE ROUTES FOR INGRESS AND EGRESS INTO HIS PROPERTY.
II. WHETHER APPELLEE HAD PROPER STANDING BEFORE THE CHANCERY COURT AS HE FAILED TO EXHAUST ALL MANDATORY ADMINISTRATIVE REMEDIES PRIOR TO FILING LITIGATION, AND FAILED TO JOIN ALL NECESSARY PARTIES TO HIS SUIT.
III. WHETHER THE CHANCELLOR ERRED IN AWARDING APPELLEE A FIFTY FOOT WIDE UTILITY EASEMENT OVER APPELLANT'S PROPERTY WHEN STATUTORY AUTHORITY ONLY ALLOWS FOR INGRESS AND EGRESS.
IV. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY FAILING TO AWARD APPELLANT COMPENSATION FOR THE TAKING OF HIS PROPERTY.
¶ 3. Finding no merit to any of the issues, we affirm.

FACTS
¶ 4. Shelton purchased forty acres of real property in Raymond, Mississippi that has no road access. Shelton's forty acres were at one time two separate twenty acre tracts of land, although Shelton purchased both twenty acre tracts together as one and on the same date. This appeal centers around which twenty acre tract of the forty acres provides Shelton with an easement by necessity through adjoining property.
¶ 5. Shelton asserted that he was entitled to an easement by necessity through Fike's property because twenty acres of Shelton's forty acre parcel were at one time part of a commonly-owned tract of land with the Fike property prior to its partitioning in 1932. Shelton's twenty acre tract that was in common ownership with the Fike property is hereinafter called parcel one. Shelton's twenty acre tract that was not in common ownership with the Fike property is hereinafter called parcel two.
¶ 6. Fike owns a sixty acre tract of land located to the southwest of Shelton's property and it connects with parcel one. The Fike property adjoins Lebanon-Pine Grove Road, a public road, along the southwest corner of the property. North of the Fike property and west of the Shelton property (parcel one) is a twenty acre tract of land owned by Levi Sturgis, Jr.
¶ 7. The Shelton, Fike and Sturgis properties were at one time part of a hundred acre tract of land owned by Christiana Sturgis. The land was partitioned among the three heirs of Christiana Sturgis in 1932, as follows: Fike's sixty acre tract *1230 was conveyed to Calvin Sturgis; the Levi Sturgis, Jr. property, which is north of Fike's property and consists of twenty acres, was conveyed to Levi Sturgis, Sr.; and the twenty acres owned by Shelton (parcel one), which is east of the Levi Sturgis property, was conveyed to Minnie Sturgis Washington. Shelton investigated the land records and discovered that road access for Christian Sturgis' property before partitioning had been through the Fike property because Lebanon-Pine Grove Road was in existence in 1932 and adjoined the Fike property prior to its partitioning.
¶ 8. Fike argues that Shelton had access to his property because other adjoining landowners had granted Shelton verbal permission to cross their property. Parcel one adjoins the Sturgis property and the Robinson property abuts the Sturgis property to the west. Parcel two is surrounded by the Berry property to the north and east. Shelton says he was given permission by Robinson to walk across his land to reach his property but was not given permission for motorized travel. Fike asserts that Shelton was given unrestricted access to Berry's land for entry to his property. Shelton contended that use of the Berry property was in the form of a license that was revocable at will.
¶ 9. Lebanon-Pine Grove Road and Dry Grove Road, are the only public roads that would provide access to Shelton's forty acres. Access from Dry Grove Road would require an easement through Berry's property that would intersect with Shelton's tract (parcel two) that was not in common ownership with the Christiana Sturgis property. Access from Lebanon-Pine Grove Road would require an easement through the Fike and Sturgis properties that would connect to Shelton's twenty acre tract (parcel one) that at one time had been in common ownership with the Christiana Sturgis property.

I. WHETHER THE AWARD BY THE CHANCELLOR OF AN EASEMENT BY NECESSITY TO APPELLEE WAS IMPROPER AND AN ABUSE OF THE COURT'S DISCRETION AS APPELLANT PROVED APPELLEE HAD ACCESS AND PERMISSION TO USE OTHER AVAILABLE ROUTES FOR INGRESS AND EGRESS INTO HIS PROPERTY.
¶ 10. There are two types of implication easements: easements essential to the enjoyment of the land and easements by necessity. Bonelli v. Blakemore, 66 Miss. 136, 143, 5 So. 228, 230-31 (1888). Necessity easements arise from "the implication that someone who owned a large tract of land would not intend to create inaccessible smaller parcels." Cox v. Trustmark Bank, 733 So.2d 353, 356(¶ 11) (Miss.Ct.App.1999).
¶ 11. A claimant seeking an easement by necessity has the burden of proof and must establish that he is entitled to a right of way across another's land. Broadhead v. Terpening, 611 So.2d 949, 954 (Miss.1992). An easement by necessity arises by operation of law when part of a commonly-owned tract of land is severed in a way that renders either portion of the property inaccessible except by passing over the other portion or by trespassing on the lands of another. Id. See also Rogers v. Marlin, 754 So.2d 1267, 1272(¶ 11) (Miss.Ct.App.1999). The party asserting the right to an easement must demonstrate strict necessity and is required to prove there is no other means of access. Id. An easement by necessity has a "right of access that is appurtenant to the dominant parcel and travels with the land, so long as the necessity exists. By acquiring the dominant estate, one has already paid *1231 for and procured the legal right of access to and from that parcel." Id. The easement or right-of-way will last as long as the necessity exists and will terminate after other access to the landlocked parcel becomes available. Pitts v. Foster, 743 So.2d 1066, 1068-69(¶ 8) (Miss.Ct.App. 1999).
¶ 12. Fike argues the chancery court erred in encumbering his property with an easement because Shelton was given permission from adjoining landowners to access his property defeating the strict necessity prerequisite. Fike claims there was no right to an easement by necessity because Shelton had "unrestricted access" to his property. The access that Fike refers to is Shelton's permission to gain access from the Robinson property to the west and the Berry property to the north.
¶ 13. Shelton purchased the property in order to build a weekend home. Access from the Shelton property to the Robinson property was limited to foot travel and no permission for motorized travel was given. Access from the Berry property was by oral permission and was in the form of a license which is revocable at will. The limited scope of permission granted to Shelton by Robinson and Berry is not sufficient to extinguish his right to an easement by necessity. It does not rise to the level of unrestricted access.
¶ 14. Shelton has the burden to prove he is entitled to an easement by necessity. During the chancery court proceedings, Shelton's expert witness testified that parcel one was in common ownership with the Fike and Levi Sturgis properties, prior to its partitioning by Christiana Sturgis in 1932. Evidence at trial showed the Lebanon-Pine Grove Road was in existence in 1932. Fike submitted no evidence that parcel two was in common ownership with the Berry property at any time. Shelton, therefore, never possessed a legal right to an easement through the Berry and Robinson properties without their consent and compensation.
¶ 15. Based on the evidence at trial an easement by necessity arose by operation of law at the moment the property was severed in 1932. The "right of access to the property is appurtenant to the dominant parcel and travels with the land, so long as the necessity exists." Broadhead, 611 So.2d at 953.
¶ 16. The fact that Shelton purchased the property with knowledge that it was landlocked has no effect on the disposition of this case. Nor does it matter that prior property owners of the Shelton tracts (parcel one and two) had never asserted their right to an easement through the Fike or Sturgis properties. Accordingly, the chancellor properly applied the legal standard in granting Shelton an easement by necessity.

II. WHETHER APPELLEE HAD PROPER STANDING BEFORE THE CHANCERY COURT AS HE FAILED TO EXHAUST ALL MANDATORY ADMINISTRATIVE REMEDIES PRIOR TO FILING LITIGATION, AND FAILED TO JOIN ALL NECESSARY PARTIES HIS SUIT.
¶ 17. Fike argues that Shelton lacked standing to bring suit because he failed to exhaust all administrative remedies prior to bringing the cause of action. The Mississippi Supreme Court has held that the proper method for seeking a private way across neighboring land was by petitioning the county board of supervisors. Wills v. Reid, 86 Miss. 446, 453, 38 So. 793, 795 (1905). Fike contends that Shelton's failure to petition the Hinds County Board of Supervisors violates Mississippi Code Annotated Section 65-7-201 (Supp.2002), which provides:
When any person shall desire to have a private road laid out through the land of *1232 another when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the board of supervisors of the county, which shall, the owner of the land being notified at least five days before, determine the reasonableness of the application. If the petition be granted, the same proceedings shall be had thereon as in the case of a public road; but the damages assessed shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.
¶ 18. The Mississippi Supreme Court in Broadhead made an important distinction between the rights granted under section 65-7-201 and the common law right of an easement by necessity. In Broadhead, the plaintiff did not comply with the notice requirements of section 65-7-201. The supreme court held that section 65-7-201 does not apply to an easement by necessity because it requires the petitioner to compensate the landowner for the taking of his land. Broadhead, 611 So.2d at 955. An easement by necessity has a "right of access that is appurtenant to the dominant parcel and travels with the land, so long as the necessity exists. By acquiring the dominant estate, one has already paid for and procured the legal right of access to and from that parcel." Id. Shelton was not required to petition the Hinds County Board of Supervisors under section 65-7-201 because he was entitled to an easement by necessity.
¶ 19. Fike asks the Court to reevaluate the supreme court's ruling in Broadhead and to review the Hinds County Board of Supervisors' policy of rejecting all petitions for private ways. Fike directs the Court's attention to the dissenting opinions in Broadhead. The Broadhead holding is a unanimous decision referenced with approval in Rowell v. Turnage, 618 So.2d 81, 85 (Miss.1993). The Hinds County Board of Supervisors' policy of rejecting all petitions for private ways for the reasons set forth in Broadhead is not within the jurisdiction of the Court. See also Cox v. Trustmark Bank, 733 So.2d 353, 356(¶ 13) (Miss.Ct.App.1999).
¶ 20. Fike contends that Shelton "sat on his rights" because he did not exhaust all administrative remedies with the Hinds County Board of Supervisors before initiating litigation. Fike claims that Shelton should have filed a petition or sought a writ of mandamus ordering the board to accept the petition. Shelton testified that he attended a board of supervisors meeting and was informed of the board's policy of rejecting all petitions under section 65-7-201 based on the supreme court's ruling in Broadhead. Notwithstanding the board's policy, an easement by necessity was created when the property was partitioned in 1932; therefore, Shelton was under no obligation to petition the board of supervisors or seek a writ of mandamus.
¶ 21. Fike claims that all necessary parties have not been joined in this suit. "A person subject to the jurisdiction of the court shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties." M.R.C.P. 19. Fike does not identify a specific party that is necessary to the action. Based on the evidence before this Court, all necessary parties have been joined; therefore, Fike's claim is without merit.

III. WHETHER THE CHANCELLOR ERRED IN AWARDING APPELLEE A FIFTY FOOT WIDE UTILITY EASEMENT OVER APPELLANT'S PROPERTY WHEN STATUTORY AUTHORITY ONLY ALLOWS FOR INGRESS AND EGRESS.
¶ 22. The Court will not interfere with the chancellor's findings unless *1233 he was "manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). If there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed here. Johnson v. Hinds County, 524 So.2d 947, 956 (Miss.1988); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss.1983).
¶ 23. Fike asserts that the chancellor erred in awarding Shelton a fifty foot easement and that the location of the easement has put an undue burden on the use and enjoyment of his land. Fike argues the chancellor was misled by Shelton's expert witness and granting a fifty foot easement was unreasonable. Fike is correct that an easement of twenty-five feet is the minimum width required for one residence by the Hinds County Planning Commission. But Shelton's expert witness stated that Shelton required additional footage to run electricity, water and telephone lines because the property is located a distance from the road. Electrical lines would have to be run to the property and the local electrical provider requires a minimum easement of thirty feet for this service.
¶ 24. The chancellor sits as the finder of fact. Johnson v. Hinds County, 524 So.2d 947, 956 (Miss.1988). The chancery court limited the width of the easement for purposes of ingress and egress to twenty-five feet, including the shoulders of the road. The remaining twenty-five feet of the easement was to be used solely for utility accommodation and to give Shelton room to bring equipment in to construct and repair the road. Furthermore, if Shelton decides to build a second residence on the property the Hinds County Planning Commission would require a fifty foot easement. The chancellor was not in error in granting Shelton a fifty foot easement.
¶ 25. Fike argues that the location of the easement unduly interferes with the use and enjoyment of his property. He contends the easement should have been located on the east property boundary. There was expert testimony that the east property line was not as practical due to the number of trees that would need to be removed and the existence of numerous drainage ways. Each drainage way would require a large culvert in order to make the land accessible. Many of the drainage ways run parallel with the east property boundary and would require dirt to be hauled onto the property in order to build a road at this location. There is a large creek on the upperside of the Fike property which requires the placement of a large culvert in order to reach Shelton's property. If the easement is located where Fike proposes, Shelton would be required to install at least two large culverts in drainage ways as well as a large culvert in the creek.
¶ 26. A logging road is located at the site where the chancellor located the easement. The evidence reflects the most logical location for the easement was the location chosen by the trial court.

IV. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY FAILING TO AWARD APPELLANT COMPENSATION FOR THE TAKING OF HIS PROPERTY.
¶ 27. Fike contends that compensation should be awarded for encumbering his land with an easement because it results in a taking of his property. An easement by necessity has a "right of access that is appurtenant to the dominant parcel and travels with the land, so long as the necessity exists. By acquiring the dominant estate, one has already paid for and *1234 procured the legal right of access to and from that parcel." Broadhead, 611 So.2d at 955. As previously discussed, if a landowner is entitled to an easement by necessity section 65-7-201 does not apply and compensation for the taking should be denied. Id. The trial court did not err in refusing to award Fike compensation for the easement.
¶ 28. In conclusion, this Court holds that Shelton was entitled to an easement by necessity at the moment the property was partitioned in 1932 by Christiana Sturgis.
¶ 29. Shelton was not required to proceed under section 65-7-201. Fike is not entitled to compensation for the taking of his property because Shelton was entitled to an easement by necessity. The chancellor did not abuse his discretion in awarding Shelton a fifty foot easement.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.
LEE, J., dissenting:
¶ 31. The majority affirms the decision of the chancellor relying on the supreme court's decision in Broadhead v. Terpening, 611 So.2d 949 (Miss.1992). However, as I believe the Broadhead decision needs to be revisited, I dissent.
¶ 32. I believe the court in Broadhead misreads Mississippi Code Annotated Section 65-7-201 (1972). The statute specifically gives the proper procedure in order to acquire an easement by necessity. It states as follows:
When any person shall desire to have a private road laid out through the land of another when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the board of supervisors of the county, which shall, the owner of the land being notified at least five days before, determine the reasonableness of the application. If the petition be granted, the same proceedings shall be had thereon as in the case of a public road; but the damages assessed shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.
The Broadhead court states that, under the statute, the petitioner must pay the landowner the fair market value of the land taken for the right of way. The court further states that because easements by necessity run with the land and are considered paid for at the time the dominant estate is acquired, then the petitioner would not have to pay for the land if he was determined to have an easement by necessity. However, the statute says nothing explicitly about compensation for land, only damages and costs incurred in the proceedings to acquire the right of way.
¶ 33. In response to Broadhead, the Hinds County Board of Supervisors has refused to follow the law pursuant to Mississippi Code Annotated Section 65-7-201, as evidenced by their order attached hereto. While obviously meaning well and in furtherance of judicial economy, the Board has not afforded Shelton procedural due process. The Board cannot deny petitions *1235 across the board before they are even submitted for review. Although Shelton did not petition the Board as a result of its order, he should have done so to exhaust all possible remedies before appealing his cause. Further, Shelton would have been procedurally correct in filing a writ of mandamus to the supreme court requesting that the Board perform its statutory duties in reviewing his petition.
¶ 34. The majority also takes the position that once land is divided and any part thereof is landlocked, the grantee of the landlocked property is entitled to an easement by necessity under the theory that the grantor has been compensated for such in the purchase price. This seems reasonable on the first sale, but unreasonable and inequitable for subsequent landowners, especially over sixty years later, as in the present case. The property in question was divided in 1932, and for over sixty years no efforts were made to secure an easement across the property Fike now owns. After all, failure to use property for more than ten years could lead to the loss thereof due to adverse possession. See Miss.Code Ann. § 15-1-13 (Rev.2003).
¶ 35. Presently, different owners are in possession of the subject properties, and Shelton has neither paid for an easement nor has Fike been compensated. In my opinion, Shelton has been unjustly enriched while Fike has been penalized. This approach creates a windfall for a purchaser who acquires landlocked property for a very low price with the guaranteed assurance that he can obtain an easement by necessity through another's frontage property, which most certainly was acquired for a much higher cost. This is a win-win situation for the landlocked owner and a lose-lose situation for the frontage property owner who is forced to give up some of his property without compensation.
¶ 36. As an added difficulty, under Broadhead, the owner with the frontage property has to be concerned for any property owner who may need an easement. Under this reasoning, property could be divided, re-divided, and even further divided and at some later date, because it was part of the original property, any subsequent owner may assert his right for an easement without payment, leaving any subsequent owner of the frontage property subject to losing his valuable property without prior notification. Further, the dominant owner must not only be concerned about existing landlocked owners but any who may purchase landlocked property in the future. How can one ever be sure of acquiring property that is unencumbered? All property is adjacent and connected in one way or another, and many property searches only go back thirty-two years, so how can anyone ever be sure that the property he owns is not subject to or going to be subject to an easement under this theory? How can an attorney ever certify to his client that his property is unencumbered or that it may not be used without compensation? Simply put, under Broadhead, he cannot.
¶ 37. Neither Fike nor Shelton was grantor or grantee at the initial division. Shelton has the advantage of buying the land at a lower cost because it is landlocked and then acquiring the land needed for the easement at no cost. The end result is that Fike has been deprived of as much as 14% of his sixty acre property without due process or compensation. Under article 3, Section 17, Mississippi Constitution (1890), "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner *1236 to be prescribed by law...." It seems patently unfair for Fike to be punished by the taking of his land for this easement without some compensation. However, as I believe Mississippi Code Annotated Section 65-7-201 provides an adequate remedy at law, I would reverse the ruling of the chancellor to allow Shelton to file his petition according to the statute.
BRIDGES, J., JOINS THIS SEPARATE WRITTEN OPINION.