HOLMAN *v.* RICHARDSON.

[76 South. 136, In Banc.]

1. WATERS AND WATER COURSES. *Surface water. Protection. Adjoining owner.*

When adjoining lots owned by different persons are on a different level, so that there will be a natural flow of rain water in a diffused state from the higher to the lower level, the owner

of the lower lot may fend the water therefrom, provided he does so for proper objects and exercises reasonable care to prevent unnecessary injury to the higher lot. "One must so use his own as not to unnecessarily injure others."

2. Same.

Where two methods of disposing of such water are available to the owner of the lower lot, each equally efficaceous and neither requiring an unreasonably greater expense than the other, one of which will damage the adjoining property and the other will not, the latter must be adopted by the owner of the lower lot in fending the water therefrom.

3. Surface Water. *Right of owner of lower adjoining lot.*

The owner of a lower adjoining lot has no right to prevent surface water from crossing her lot in a diffused state by means of a brick wall, causing it to pond on a higher lot, where at no greater expense she can fully protect herself by digging a ditch across her lot to a public drain, and at the same time inflict no damage on the higher lot, though she has the right to maintain such brick wall if she takes reasonable care to prevent the water ponding on the higher lot.

4. Water and Watercourses. *Prescription. Drainage. Knowledge of use.*

The owner of a higher lot could not acquire a prescriptible right to collect surface water in underground drains and cast it over and across a lower lot through a ditch to a public drain, where such underground tile drains on the higher lot were unknown to the owner of the lower adjoining lot, and where their existence in the nature of things were not open and notorious.

5. Water and Watercourses. *Surface water. Damages.*

Where an underground tile drain on a higher lot did not cause any more water to collect and flow through a ditch upon an adjoining lot, than would have done without such drain, the owner of the lower lot cannot complain of its existence.

On Suggestion of Error for Former Opinion, see 112 Miss. 921.

Appeal from the chancery court of Noxubee county. Hon. J. F. McCool, Chancellor.

The facts are fully stated in the opinion of the court.

*Neville, Stone & Currie,* for appellant.

"Surface waters are such as diffuse themselves over the surface of the ground, following no definite course

or channel, and not gathering into or forming any more defined body of water than a mere bog or marsh." 40 Cyc., page 639.

"Surface water ceases to be such when it empties into and becomes part of a natural stream or lake, but it does not become a watercourse by being gathered into an artificial ditch and led away." 40 Cyc., page 640, and authorities in notes 13, 14 and 15.

"Thus, waters from rain or melting snow, having no banks or channels in the soil, are regarded as surface waters though they constantly and naturally flow in a known direction of course, as in the case of valleys and depressions of an undulating country, through which the waters from rains and snows are accustomed to find their way." 30 Am. & Eng. Enc. Law (2 Ed.), page 324, and authorities cited in footnotes.

"The common law rule with reference to surface waters is, that it is a common enemy which every proprietor may fight as he deems best, regardless of its effect upon other proprietors, and that accordingly the lower proprietor may take measures necessary for the protection of this property, although the result is to throw the water back upon the land of the adjoining proprietor." 40 Cyc., page 642; 30 Am. & Eng. Enc. Law (2d Ed.), page 330. The common-law rule is in force in Mississippi. *Alcorn* v. *Sadler*, 66 Miss. 221; *Sinai* v. *R. R. Co.*, 77 Miss. 547.

Even in those states which have not adopted the common law, or common enemy doctrine, it has been held that the owner of a city or town lot may obstruct the flow of surface water from adjoining premises. *Reilly* v. *Stephenson*, 128 Am. St. Rep. 805; *Shahan* v. *Brown* (Ala.), 60 So. 891.

This last case of *Shahan* v. *Brown* was recently decided by the supreme court of Alabama, and the opinion was written by Mr. Justice McLELLAND. We call the court's especial attention to this case.

"This fact that surface water has for years flowed according to the natural lay of the land from the upper land, does not give a prescriptive right to have such flow continue and deprive the owner of the lower land of the right to obstruct such flow so as to cast back water on the land of the upper owner." 30 Am. & Eng. Enc. Law (2 Ed.), page 334; *Swett* v. *Cutts,* 9 Am. Rep. 276.

"No title by prescription can be acquired in an easement without the acquiesence and knowledge of the owner of the servient tenement." 22 Am. & Eng. Law (2d Ed.), page 1210.

The supreme court of Mississippi, in the case of *Mississippi Mills Co.* v. *Smith,* 69 Miss., 299, held that the right claimed by prescription must be limited by the character and extent of the right exercised during the prescriptive period.

The use of a way over land in order to ripen into a title by prescription, must be under color of right, and the privilege exercised must be such as to expose the party asserting such right of way to an action if he wrongfully exercised such right." *Warren County* v. *Mastronarde,* 76 Miss. 76.

"A hostile, actual, open and notorious, exclusive and continuous occupancy for the statutory period is essential to constitute effective adverse possession." *McCaugh* v. *Young,* 85 Miss. 277.

*W. W. Magruder,* for appellee.

In many jurisdictions, the courts hold that neither the common-law rule nor the civil-law rule is applicable to existing modern conditions but that the right of a servient proprietor to obstruct a flowage of water from the dominant premises is a right to be exercised only within narrow limitations, depending upon the reasonableness and good faith of such obstruction, the purpose thereof, the lack of injury to the dominant premises and other similar considerations.

A compilation of the authorities under the two general rules or modification of such rules will be found in 85 Am. State Rep., page 715, in which this state is classified among those states adopting the modification of the two general rules.

We refer the court in this connection to the following authority:  *Hunt* v. *Sain,* 54 N. E. 325, in which a mandatory injunction was approved, directing the removal of an obstruction by the servient proprietor.  Also see *Nibordy* v. *Murray,* 52 N. E. 325;  *Roe* v. *Howard County,* 106 N. W. 587;  *Cushing* v. *Pires,* 57 Pac. 572;  *Finkbinder* v. *Earnest,* 85 N. W. 1127;  *Priest* v. *Maxwell,* 104 N. W. 344;  *Montgomery* v. *Locke,* 11 Pac. 874;  *Boyd* v. *Conklin,* 20 N. W. 595;  *Shane* v. *R. R. Co.,* 36 Am. Rep. 480.

The fundamental principle under the modern authorities is the maxim, *"sic utere tuo ut alienum non laedas."*

Tested by this salutary principle, the decision of the chancellor in this case will commend itself to all men who seek right and love justice.

In a recent memorandum or rule from Division A. of this court in the pending case, *Maud B. Hicks et al.* v. *G. W. Meek et al.,* reference is made to *Sinai* v. *R. R. Co.,* 71 Miss. 547.  In this tentative memorandum, the purpose of which is a request of counsel in the Hicks case for briefs, upon certain suggested points, the court indicates—and assumes, in a conditional way, under the Sinai case that the owner of the servient premises "has the right to obstruct the flow of surface water" from the dominant premises.

Of course, the memorandum is not a judicial decision and does not purport to be.  It is only a tentative suggestion and inquiry for additional information as an aid to decision.  In this connection, we submit;  first, that the Sinai case is no authority for the court's tentative and conditional assumption;  second, that in any event, the instant case would be governed by the qualification

that such obstruction of flowage must be "done reasonably for proper objects and with due care" for appellee's land.

The Sinai case does not appear on casual reading to assume that our courts have adopted the common-law rule that surface water is a common enemy, which every landed proprietor. can resist and fight at and upon his premises with every means at his disposal. However, as we have already shown, no such decision from this court has been or can be cited for the common-law rule. The Sinai case, upon the contrary expressly recognizes, as does every other decision of our court, the right to the flowage of surface water onto and across the servient estate.

The only question under consideration is as to the method and manner of regulation for this flowage. This Sinai case deals with nothing else. Under any other theory, it would have been a complete defense to the Railroad Company that Sinai had a lawful right to obstruct and dam out from his premises the flowage of surface water, failing to do which, he became responsible himself for his resultant injury or damage.

Point two: It is the well-settled doctrine of the courts, including this jurisdiction, that an easement or prescriptive right may be created and acquired by the statutory occupancy or user for the required period of time under claim of right. *Ryan* v. *M. V. & S. I. R. R. Co.,* 62 Miss. 162; *Alcorn* v. *Saddler,* 66 Miss. 221.

If there was the slightest degree of uncertainty in this state as to the extent and quality of the prescriptive right in a case such as that at bar, it was conclusively settled by the decision in *Crumbaugh* v. *M. & O. R. R. Co.,* 105 Miss. 485.

"A right to flow water over land may be acquired by prescription. It is stated in Farnham on Water and Water Rights, Vol. 2, sections 558 and 559, that: 'Permitting water to be thrown back upon another's land for

the prescriptive period will raise the presumption of a grant, unless it is shown to have been done under some other right. . . . The continuous flowage of the upper land is sufficient notice that the use is claimed to be adverse. When the right has been acquired by prescription it is as absolute as any other right. . . . The right may be obtained, whether the obstruction to the flow of the stream is a natural or artificial one—the flowage must be under a claim of right, open, notorious, and adverse to the true owner, and it must be continuous and of such a character as to interfere with the rights of the one against whom it is claimed.'

"The prescriptive period in this state is ten years. In the present case it is proved beyond dispute that the flow of water of the creek in the new or present channel has been for over twenty years. In truth, it is stated that it has continued without interruption, but also it has been adverse, exclusive, open, and notorious. Therefore the easement for the flow of water has become a prescriptive right, acquired by appellee." The existence of Mr. Richardson's tile opening into the head of appellant's ditch to Hale street for at least twelve years before this litigation was instituted is abundantly proven.

In a Louisiana case, *Vincent* v. *Michel*, 26 Am. Dec. 496, the court holds that "servitude of drip" may be acquired by prescription, and furthermore that such alteration of the roof as decreases the servitude is no interruption thereof.

Counsel for appellant in their supplemental brief insist that appellee did not acquire a right to the flowage of water across appellant's premises, because as they claim she did not know of the underground tiling. They cite five cases in support of this contention. In response, we say that the flowage of the water across her garden to Hale street was in no way dependent on such tiling and in any event, the tiling was not concealed but protruded under the fence into the head of the ditch in plain view from appellant's side of the fence.

The Corbey case upon which appellant relies, 83 Am. Dec. 688, deals with a concealed tile so old that its existence was absolutely unknown. The cases cited in the notes to this decision appear to be of little value, if any, in the consideration of the questions at issue on this appeal, because they are dealing mainly with the question of reserved easements by implication.

Appellant also relies upon *Gray* v. *Cambridge* (Mass.), 2 L. R. A. (N. S.) 976. That case is no authority for their position. It merely holds that for the creation of an easement by prescription, the owner of the fee must know of the adverse user or be chargeable with knowledge. Appellee by his tile at the head of the ditch neither increased or accelerated the flowage of water; but in any event, appellant could not sit by for twelve years with the tile protruding and extending in plain view, directly and immediately into the head of the ditch, and then be permitted to say, "I did not look at it."

The case note under this decision announces it as authority for an alternative proposition. The owner must either (A) know or (B) be chargeable with knowledge. While the multiplication of authority from other states on easement by prescription is of little value in view of the definite holdings in this state, we might refer the court to: *White* v. *Chapin*, 12 Allen (Mass.) 516; *Schnitzius* v. *Bailey*, 48 N. J. Eq. 409; *Leidlein* v. *Meyer*, 95 Mich. 586.

These cases hold that under the common-law rule, the lower proprietor has a right of action within the statutory period, and that if he fails to exercise it, an easement by prescription will be created.

In *Trenton* v. *Rucker*, 34 L. R. A. (N. S.) 569, the Michigan court sustains the right of a municipality, even in an urban case, to discharge surface water in the absence of a sewerage system upon a lot where it has flowed from time immemorial.

In *Earl* v. *De Hart*, 72 Am. Dec. 395, the New Jersey court holds in line with our own court that an easement

by prescription may be acquired by the adverse user for the statutory period through a ditch, it being immaterial whether it be a natural or an artificial ditch.  See *Mc-Kinley* v. *Chosen Freeholders,* 28 N. J. Eq. 171; *Shane* v. *Kansas City,* 71 Mo. 237.

Point three:  At best, appellant can contend only for a conflict of evidence in this case and that is of no value in this court.  It has been uniformly held that the decree of the chancellor on facts should not be reversed unless clearly and manifestly wrong.  *Derdeyn* v. *Donovan,* 81 Miss. 696; *Lot* v. *Hull,* 104 Miss. 308.

It can hardly be said that appellant's evidence in this case raises a serious question of fact on the real merits of the controversy and we assert without fear of successful contradiction that the overwhelming weight of the evidence in this case is with the decree of the court, below.

SMITH, C. J., delivered the opinion of the court.

Appellant and appellee own and reside upon adjoining lots in the city of Macon; that of appellee bounding appellant's lot on the north and west.  The level of appellee's lot is higher than that of appellant's, and there is a large swale or hollow beginning on appellant's premises some distance from and extending down to the line separating the two lots.  This swale or hollow is not a natural drain in the sense that by it water is collected in or confined to a well-defined natural channel, but because of it, however, a large volume of water is at times collected at the point where it touches appellant's lot.  At this point a ditch, dug many years ago by a gentleman who then owned both lots, conducts the water across appellant's lot to a public drain along the street which bounds appellant's lot on the south.  Two or more underground tile drains accelerate the flow of the water from appellee's lot to the head of this ditch across appellant's lot, but discharge no water thereon other than such as

would be so discharged without them. In addition to the water collected at the head of this ditch water also flows from appellee's lot on and across appellant's lot for practically the entire length of the line dividing them. The volume of water which now flows from appellee's lot across that of appellant's is less than it was when appellee purchased his, because of certain artificial drains, other than those here complained of constructed by him, which conduct a portion of the water in another direction. The flow of this water across appellant's lot is damaging to her, and if it should remain on appellee's lot will damage him. In order to prevent this water from flowing across her lot appellant commenced the erection of a solid brick wall extending the full length of the line separating it from appellee's lot, the effect of which would be to cast the water back upon appellee's lot. A ditch can be dug along the north and west line of appellant's lot at a cost not exceeding that of this brick wall which would conduct the water to the public drain on the south side of appellant's lot, into which the ditch which now crosses her lot flows, by means of which the water would be prevented from damaging either of the parties hereto. After appellant began the erection of this brick wall and before its completion appellee filed his bill in the court below praying that she be enjoined from building and maintaining it. A temporary injunction was granted in accordance with the prayer of the bill, which injunction on final hearing was made perpetual.

Two questions are presented to us by this record: First, to what extent, if any, may appellant obstruct the natural flow of rainwater in a diffused state from appellee's premises over and across her own? Second, what right, if any, has appellee to collect rainwater falling upon his premises by means of artificial drains and discharge it on the premises of appellant?

Any discussion of the rules of the civil and of the ancient common law with reference to the right of one

landowner to obstruct the flow of surface water from
the land of an adjoining owner on and across his and
the difference, if any such in fact exists, between the
rules of those two systems of law will be of no value
here for the reason that the rule with us, as will appear
from examination of the cases from this court herein-
after cited, is that when adjoining lots owned by differ-
ent persons are on a different level, so that there will
be a natural flow of rainwater in a diffused state from
the higher to the lower level, the owner of the lower lot
may fend the water therefrom, provided he does so for
proper objects and exercises reasonable care to prevent
unnecessary injury to the higher lot. *Railroad Co.* v.
*Miller,* 68 Miss. 760, 10 So. 61; *Sinai* v. *Railroad Co.,*
71 Miss. 547, 14 So. 87; *Railroad Co.* v. *Smith,* 72 Miss.
677, 17 So. 78, 27 L. R. A. 762, 48 Am. St. Rep. 579;
*Railroad Co.* v. *Davis,* 73 Miss. 678, 19 So. 487, 32 L.
R. A. 262, 55 Am. St. Rep. 562; *Railroad Co.* v. *Paine,*
19 So. 199; *Railroad Co.* v. *Wilbourn,* 74 Miss. 284, 21
So. 1; *Railroad Co.* v. *Daniels,* 108 Miss. 68, 66 So. 324.
That the rule applied in these cases above announced
was so understood by Mr. Freeman will appear from
the note to *Mizell* v. *McGowan,* 85 Am. St. Rep. 724.
This rule, which also prevails in several other states
(3 Farnam on Waters, section 890, p. 2616, and au-
thorities there cited), is based upon and is simply a con-
crete application of the maxim that, "One must so use
his own as to not unnecessarily injure others."

A corollary to this rule necessarily is, that where two
methods of disposing of such water are available to the
owner of the lower lot, each equally efficacious and nei-
ther requiring an unreasonably greater expense than the
other, one of which will damage the adjoining property
and the other will not, the latter must be adopted by the
owner of the lower lot in fending the water therefrom.
The decision in *Sinai* v. *Railroad Co., supra,* turned
upon this express proposition, as was pointed out in
*Railroad Co.* v. *Davis,* 73 Miss. 678, 19 So. 487, 32 L. R.

A. 262, 55 Am. St. Rep. 562, wherein the court, in approving the holding in that case, said:

"A company having a right to construct its railroad may not, in regard of the rights of adjoining proprietors, so construct its roadbed as to destroy the value of the lands of third persons, even though the injury be occasioned by turning back surface water upon such lands, if, with due regard to the duty it owes to the public, and in the reasonable use of its own property, and at no undue expense, it can, by putting in trestles, culverts, or other openings, provide a way through which such water may safely be allowed to escape."

It is true that in the cases wherein this court has heretofore dealt with this question the offending party was a railroad company, but there can be no distinction in this regard between the rights and duties of such a company and of an individual as pointed out in 3 Farnam on Waters, section 904, except, as set forth in *Railroad Co.* v. *Davis, supra,* such as may be caused by the fact that since a railroad company is authorized by law to construct its embankment, it may not be liable at all for damages which necessarily result to an adjoining landowner from a proper construction thereof, and, we may add further, except such difference as may be caused by the provision of section 17 of our present Constitution, that "private property shall not be . . . damaged for public use, except on due compensation being first made to the owner or owners thereof," which section, however, had no influence on those decisions.

Applying this rule in the case at bar, it necessarily follows that the appellant is without right to prevent this surface water from crossing her land in a diffused state by means of a brick wall, thereby causing it to pond on appellee's land, for she can at no greater expense fully protect herself by digging a ditch across the north and down the west boundary of her lot to the public drain hereinbefore referred to and at the same time

inflict no damage upon appellee.  Appellant, of course, has the right to erect and maintain this brick wall, but in so doing she must exercise reasonable care to prevent the water being thereby caused to pond on appellee's lot to his damage.

Coming now to the second question.  Appellee's claim is that he has acquired the right by prescription to collect this water in the underground tile drains complained of and cast it over and across appellant's land through the ditch extending from the end of the swale or hillside hollow to the public drain on the opposite side of her lot.  It is unnecessary for us to determine whether or not such a right may be acquired by prescription, for the reason, if no other, that the existence of these underground tile drains was unknown to appellant until about three years before the beginning of this litigation, and their existence in the very nature of the thing was not open and notorious.

It appears, however, from the evidence that the conformation of the surface of appellee's lot is such that the underground tile drains complained of do not cause any more water to collect at the head of and flow through the ditch across appellant's lot than would so do without them, and it does not appear that they accelerate the flow of the water to such an extent as to thereby damage appellant more than she would be without them, from which it necessarily follows that she has no ground of complaint because of their existence.

The decree of the court below having taken a much broader scope than is warranted by the foregoing views was erroneous, so that we committed no error in reversing it, but the cause should have been remanded instead of judgment final being entered here.  Our former judgment, therefore, will be set aside, the decree of the court below will be reversed, and the cause remanded.  The former opinion herein rendered will be withdrawn.

*Reversed and remanded.*

STEVENS, J. (specially concurring). I agree in the re-- sult reached by the court, that is, the order reversing and remanding the cause. I do not concur in the reason- of the majority in the opinion this day delivered on the· suggestion of error. I agree with Judge Cook in the· interpretation which he has placed upon previous decisions of this court, and, in the main, I agree with the· views expressed in his concurring opinion. It is perfectly manifest to me that the process of reasoning in the majority opinion completely changes the law of waters in Mississippi and substitutes a rule that has· never before been recognized in this state. I think the· court should at least declare in express language that previous holdings of our court are overruled.

Much importance is given by the court to the maxim that one must so use him own as not unnecessarily to in- jure another's. This might be termed the "golden rule" which the law applies to the every day affairs of men. I fully recognize this broad principle of justice, but the principle is erroneously applied in the instant case. As applied to the present case it is made to say that Mrs. Holman, as the owner of the lower estate,. must receive and at her own expense dispose of the surface water flowing from the upper estate, simply and solely because she, at a reasonable expense, can drain off or dispose of these surface waters. The record shows: conclusively that Mr. Richardson, as the owner of the· upper estate, can ditch and drain off his own surface waters at a reasonable expense. The majority say that the obligation must be borne by Mrs. Holman, the owner of the lower estate. I say that the obligation is the primary obligation of Mr. Richardson, the owner of the up- per estate. I fail to see the justice of permitting a well- to-do landlord to install a system of underground tiling and by means thereof to concentrate at one point and project surface water upon the humble garden spot of a helpless widow. Yet this is the very action which the·

court now approves. It would not be so bad if Mr. Richardson did not have a system of underground tiling. In that case the surface water would be diffused over a larger area and would run onto the premises of Mrs. Holman in a manner less calculated to do so much damage. As it is, the proof shows that the surface waters from the large premises of Mr. Richardson are collected into one large pipe and through the mouth of this pipe projected into a ditch leading through Mrs. Holman's premises. The result of this is that the garden of appellant is frequently overflowed to the extent that a large part thereof cannot be utilized. Mrs. Holman then is the one who is "unnecessarily injured" under the maxim applied by the majority. I have always been taught that a landowner has complete dominion over his own so long as he does not unnecessarily injure another. Mrs. Holman has done nothing to injure Mr. Richardson's premises. She is simply arranging her own premises so that they may be utilized. What she does is in the interest of good husbandry. There is no complaint, that she does not take care of her own surface water. The sole complaint is that she ought to take care not only of her own surface water, but of the surface water which falls upon Mr. Richardson's estate. She then is having a double burden imposed upon her, while Mr. Richardson escapes all burden whatever. This manifectly reverses the rule heretofore existing in Mississippi. If Mr. Richardson could not possibly provide ditches and drains for his own land, the case might be different. It is not, however, an instance where the upper tenant cannot possibly take care of his own excess surface water without imposing upon the lower estate. He can provide his own drainage and that across his own land. This, in equity and good conscience, he ought to do. Our court made an exception in the application of the law against railroad companies. The reason for this was clearly announced by our court in the Sinai

Case. The very charter rights of railroad companies empower them to appropriate a narrow strip of country across large stretches of agricultural lands and to construct thereon miles of embankments. which necessarily obstruct natural drainage. Of course, the present case does not fall within the exception. The majority opinion declares that:

"The owner of the lower lot may fend the water therefrom, provided he does so for proper objects and exercises reasonable care to prevent unnecessary injury to the higher lot."

There is little consolation in this statement of the court when it is followed by the express holding that the lower tenant must pay the expense. Of course, the lower tenant can always fend off the water by appropriating his own land for necessary ditches and paying all the expense himself. If this is a natural right it is a very costly one.

There is neither claim nor showing that the curb or wall being constructed by Mrs. Holman is a "spite wall." Her attempt to improve her property should be encouraged.

COOK, J. (dissenting). As I have always considered and still consider the settled law to be in this state, the opinion of the court in this case has destroyed the rule. Judge CAMPBELL, speaking for this court in *Alcorn* v. *Sadler*, 66 Miss. 229, 5 So. 695, had this to say:

"He may arrest its flow over his land and divert it before it gets to rest in the reservoir or lake or whatever the body of water may be called, but after it loses its casual and vagrant character as surface water diffused over his land, and reaches the place of rest and becomes a body or collection of water, owned chiefly by another, he cannot lawfully drain it and destroy what belongs to that other in order to clear of water that part of his own land covered by it."

The last pronouncement of this court upon the Mississippi rule was made one year ago in *Harvey* v. *Railroad Co.,* 111 Miss. 838, 72 So. 274, in these words:

"By the recognized law of this state surface water may be appropriated to his own use by the landowner, or he may expel it from his land. 'Surface water is regarded as a common enemy, which every proprietor may fight or get rid of as best he may; but a landowner has no right to rid his land of surface water by collecting it in artificial channels and discharging it through or upon the land of an adjoining proprietor.' Gould on Waters (3 Ed.), sec. 271."

The opinion of the court cites several cases decided by this court to support its decision, which I will briefly review. The first case cited is *Railroad Co.* v. *Miller,* 68 Miss. 760, 10 So. 61. In passing it will be noted that the court in the case cited expressly approves the rule announced in *Harvey* v. *Railroad Co., supra,* but aside from the fact that this case involved the diversion of natural water courses, the gist of the decision may be found in this paragraph:

"The defendant has, for the protection of its roadbed, dug a ditch along its eastern line, into which is collected surface water, falling upon adjacent lands for a half mile along the ditch, and which but for the ditch would have flowed upon lands of other persons, and has discharged the water thus accumulated upon the lands of the plaintiff, which were free from the flow of the water in its natural course. Upon all the authorities this is an unlawful act, and for it the plaintiff is entitled to recover."

It is difficult to find in the case just discussed any authority for the holding of the majority in the present case. The next case cited by the court is *Sinai* v. *Railroad Co.,* 71 Miss. 547, 14 So. 87. Judge Woods, after stating the facts, opens his opinion with these words:

"The question presented is resolvable by the application of common-law principles to new and changed conditions. At the ancient common law every landowner fought and fenced against surface water as suited his necessities. It was a common enemy, which the landowner dealt with according to his own pleasure, for his own protection. But this strict rule had its origin when the soil was used for agricultural purposes. In that primeval day of the law's birth and growth, a railway corporation . . . was undreamed of."

So it was in that case the court wisely, I think, modified the rule to fit unforeseen and undreamed-of conditions. It was an adjustment of the law to a "new order of society." This case left undisputed the general rule—the common-law rule which had theretofore been applied to the known conditions. But the court applies to this case the maxim that each person must so use his own property as not to do unnecessary harm to another.

In the present case we have nothing new; the situation here is the same everywhere in the rolling lands of the state, and the effect of the decision is to totally destroy the rule—to make the lower estate the servient estate. In other words, the maxim is made much more potent than the rule of law heretofore recognized by the courts of this state, and if the decision of the court is to be the law, the civil law with regard to surface waters will hereafter prevail, for it is difficult to imagine a case wherein to fight surface water would not be denied, upon the theory of injury to the upper proprietor. I confess, in the light of the ruling of this court in the present case, that I have never understood the Sinai Case. The court, in that case, as I have always understood, was undertaking to uphold the common-law rule with such limitations as the unique conditions manifestly demanded. It will be noted, however, that the railroad company was held liable in that case, but not the appellee in this case, who did a similar act;

that is to say, he has maintained his right to dump the surface water flowing from and over his lands onto the lower lands, and the lower owner is enjoined from making a fight against the enemy. Stated differently, in the Sinai Case the railroad company was held liable for misusing the surface waters, and the appellee here is accorded the right and power to prevent the appellant from raising her hand in defense clearly because her land is somewhat lower than the dominant estate—a reversal of the rule heretofore applied in this state. In the present case Mrs. Holman is required, by the decree of this court, to bear the expense of taking care of the surface water flowing over and off Mr. Richardson's lot, while it would not cost Richardson any more to do so than it will cost Mrs. Holman.

This decree can only be defended upon the civil law theory that the upper estate is the dominant estate and the lower estate is the servient estate; a reversal of the Mississippi rule, as I understand it. The next case cited by the court for its opinion is *Railroad Co.* v. *Smith,* 72 Miss. 677, 17 So. 78, 27 L. R. A. 762, 48 Am. St. Rep. 579. This is another railroad case, and deals with flowing streams and the overflow waters of same, and, this being true, it has no application to the present case for the reasons mentioned above. But the Smith Case needs no interpretation, and we will quote from the opinion therein a statement of the conditions then under consideration, viz.:

In *Sinai* v. *Railroad Co., supra,* we declared that the supposed rule of the common law, under which it was there claimed that each proprietor had the absolute right of excluding surface water from his premises, regardless of any injury to an adjoining proprietor, could not be invoked (if it in fact existed) by a railroad company asserting a right to submerge hundreds of acres of adjoining land with surface water by its embankment. It is apparent that a rule intended to regulate the correlative rights of adjoining landowners whose property

is devoted to agriculture or residence purposes could not be applied to the same extent, either in favor or against a railroad company owning a strip of land one hundred feet wide and hundreds of miles long.''

Again, the majority opinion cites *Railroad Co.* v. *Davis,* 73 Miss. 678, 19 So. 487, 32 L. R. A. 262, 55 Am. St. Rep. 562. I do not think this case has the remotest application to the present case. It was held in that case that the company had presumably paid for all damages flowing from the proper construction of the road, in the eminent domain proceedings, and that the company was under no duty to so construct its roadbed as to provide against all except unprecedented overflows. *The Daniels Case,* 108 Miss. 68, 66 So. 324, did not involve the questions here discussed, and this manifestly appears from a reading of the opinion, and this is true of *Railroad Co.* v. *Paine,* 19 So. 199.

Having discussed all the cases cited in the majority opinion, and believing that not one of these cases afford any authority for the holding of the court, I will add a word about the case decided. The court has stated the case most favorably for Mr. Richardson, not more so than the evidence offered by him warrants, and in my opinion the statement does not entitle him to the relief accorded him.

Having the utmost respect for the learning and ability of the members of the court concurring in the opinion, I nevertheless believe that they have entirely misconceived the principles announced in the cases relied on. These were all railroad cases, and in all of them this court was at pains to explain that they were exceptional cases and called for a modified rule; an equitable and just rule to meet modern conditions. Of course, there was no thought of applying one rule to a railroad corporation and a different rule to private persons similarly situated, for the obvious reason that private persons, unless they engage in the business of building and operating commercial railroads, can never find themselves in

the same situation. The railroad cases are in a class to themselves, because they bring about conditions unlike other classes of landowners.

I concur in the judgment of the court reversing the decree of the chancellor, but dissent from the rules of law announced in the opinion.

This change in the common law of the state is a legislative function, and if I correctly interpret the rules of law controlling this case, the court has assumed the role of legislators, which, in my opinion, is always dangerous, and in this case of doubtful wisdom, to put it mildly.