Cowan *v.* Baker

No. 40122      May 7, 1956      87 So.2d 74

*Lewis & Alexander,* Jackson, for appellant.

*Crisler, Crisler & Bowling,* Jackson, for appellee.

KYLE, J.

This case is before us on appeal by J. D. Cowan, defendant in the court below, from a decree of the Chancery

Court of Hinds County awarding damages and injunctive relief to John H. Baker, complainant, on account of the alleged diversion of surface waters on to the complainant's lot as a result of the construction by the defendant of a dirt fill on the lot lying immediately west of the complainant's lot.

The complainant alleged in his bill of complainant that he was the owner of a house and lot at 299 Wood Dale Drive, in the City of Jackson, and that the defendant was the owner of the lot lying immediately west of the complainant's lot; that the defendant's lot, in its natural condition prior to the construction of the dirt fill thereinafter complained of, was lower in grade and drainage than the complainant's lot, and the surface waters from the areas north and east of the two lots were accustomed to flow southwardly and westwardly over and across the defendant's lot; but that shortly before May 1, 1954, the defendant raised the surface level of his lot by filling in his lot with dirt to a height of several feet above the natural surface level of the lot, making the surface level of the lot somewhat higher than the surface level of that part of the complainant's lot lying immediately east of the defendant's lot and thereby causing the surface waters flowing toward the two lots from the north and east, in times of heavy rainfalls, to be diverted over and onto the complainant's lot; that on or about May 1, 1954, a heavy rain fell in the Wood Dale area and the surface waters flowing southwardly across Wood Dale Drive ran toward and against the dirt fill constructed by the defendant and were turned with great force and violence onto the complainant's lot, inflicting damage upon the complainant's property. The complainant further alleged that the complainant thereafter notified the defendant of the damage inflicted upon his property as a result of the diversion of the surface waters onto his property, and requested the defendant to take steps to remedy the situation, but the

defendant had failed and refused to do so. The complainant prayed for the issuance of a mandatory injunction requiring the defendant to excavate or remove the filled in dirt adjacent to the boundary line between the two properties, so that the surface waters would again flow in their natural state and not be diverted and caused to flow upon the complainant's property. The complainant also asked for damages in the sum of $121.49.

The defendant in his answer admitted the ownership of the lot lying immediately west of the complainant's lot, but denied that the surface waters had been accustomed to flow freely over his property. The defendant admitted that he had added some dirt to his lot for the purpose of raising the ground level of the lot, but denied that the natural flow of surface waters had been changed by the filling in of his lot or that the waters had been diverted over and onto the complainant's lot; and the defendant averred in his answer that the damage alleged to have been sustained by the complainant was not caused by any act of the defendant but was the direct and proximate result of flood waters escaping from Eubank and other creeks during a flash flood.

The cause was heard by the chancellor upon the pleadings and proof. There was little conflict in the testimony of the witnesses, except as to the amount of the actual damage that the complainant had sustained.

The testimony shows that the lots mentioned above are situated in a comparatively new residential section of the City of Jackson. Two small creeks flow through that area. Eubank Creek cuts across Wood Dale Drive at the northwest corner of the lot upon which the appellant constructed the dirt fill, and Crane Creek flows into Eubank Creek from the northeast at a point about 200 feet north of Wood Dale Drive. The total area that drains into the two creeks north of Wood Dale Drive is approximately 3470 acres. Neither creek carries any considerable amount of water during the dry seasons

of the year. The channels of the creeks are winding and of insufficient depth to provide adequate drainage in times of heavy rainfalls for the lands lying within the drainage basin. The assistant city engineer testified that the flow of surface waters from the lands had been expedited by the clearing of the lands for residential purposes and the construction of dwelling houses, hard-surfaced driveways, street curbs and sidewalks. The Weather Bureau records showed that the rainfall in the area on May 1, 1954, was between 4 and 5 inches. Water flowed over the banks of Eubank Creek north of Wood Dale Drive, and the overflow and surface waters ran over the street and against the dirt fill on the defendant's lot. Since the dirt fill was somewhat higher than the level of the street and the west side of the complainant's lot, much of the water was diverted eastwardly and precipitated onto the complainant's lot, causing considerable damage to the complainant's fence and flower beds. The complainant himself testified concerning the damage done to his land, his fences and his flower beds, as a result of the overflow of the waters upon his land. Such rainfalls usually occur only during the spring season. A contour map of the lots referred to in the pleadings was offered in evidence by the defendant, and the map showed that the dirt fill which the defendant had constructed on his lot was somewhat higher than the center of Wood Dale Drive and two or three inches higher than the lowland along the complainant's west line.

The chancellor found that the raising of the level of the defendant's lot would cause but little damage to the complainant's property except at times when there were extremely heavy rains, and such rains came only about once a year in the vicinity where the properties were located; but "it was pretty clear" that when the unusually heavy rain did come on May 1, 1954, some damage over and above what would have occurred had the fill

not been on the defendant's property did occur to the complainant's lot.

The chancellor stated that in his opinion the defendant could, without great damage to his property, open up a small drain across the east line of his property, and to the west of the complainant's property, where the natural flow of the water was prior to the time the dirt fill had been put in, and in addition thereto, could lower the fill on the west side of his property to a point about midway of the lot and provide a gradual slope to the west, so that a greater portion of the water would go across the west and south sides of the defendant's property rather than backing up and running down Wood Dale Drive ditch and around the defendant's southwest corner onto the complainant's property; and the chancellor entered a decree awarding damages to the complainant in the sum of $85, and ordering that the defendant reduce the fill on his property by removing 12 inches from the top of the fill on the west side of his lot, as directed in the decree, so as to create a gradual slope to the west which would cause the flood waters to go across the west and south sides of his property instead of backing up and shooting down Wood Dale Drive ditch and around the corner onto the complainant's property. The defendant was also directed to remove the top of the fill toward the east so as to decrease gradually the depth of the fill on that side.

The first point argued by the appellant's attorneys as ground for reversal on this appeal is, that the chancellor erred in his finding that the act of the appellant in placing the dirt fill on his lot was a proximate cause of the damage sustained by the appellee.

But we think there is ample evidence in the record to support the chancellor's finding that the placing of the dirt fill on the appellant's lot resulted in the infliction of some damage on the appellee's lot over and above the damage that would have resulted from the

overflow waters if the fill had not been placed there. The appellant's own witness, W. E. Johnson, testified that the vagrant waters which were cast upon the land as the creek turned southwardly at a point about 200 feet north of Wood Dale Drive were deflected in a southeasterly direction across Wood Dale Drive and against the north bank of the dirt fill, where they were again deflected eastwardly and westwardly around the northeast corner and the northwest corner of the dirt fill, thereby increasing the volume of water that passed into the depression along the west side of the appellee's lot. And the photographs taken after the damage had been done support the chancellor's finding.

■■■ The second point argued by the appellant's attorneys is that the appellant had the right to elevate his lot so as to ward off all surface waters which did not flow naturally in a diffused state from the appellee's property on to the appellant's property, and therefore the appellant was not liable for the damage complained of, which was damage caused by overflow waters from a natural water course against which the appellee had the right to protect himself. It is argued that the chancellor in this case was not dealing with "surface waters" in a strict legal sense of the term, since surface waters are those which are derived from falling rain or melting snow, or which arise from springs and spread over the surface of the ground, so long as they remain in such diffused state or condition, and that the waters in this case were waters which had become a part of a natural water course, and had lost their characteristics as surface waters, and had become in fact flood waters or overflow waters.

But the proof in this case indicates clearly that the waters which flowed across Wood Dale Drive against the appellant's fill and unto the appellee's land were waters which had fallen in the drainage area lying north of Wood Dale Drive. It is true that a part of those

waters may have escaped from the creeks which converged only a short distance above Wood Dale Drive, but much of the water was surface water which had never been able to get into the creeks for the reason that the channels of the creeks were already full when those surface waters reached the creek bottoms. ■■ Under these circumstances we think that the chancellor was justified in applying the rule that was applied in Holman v. Richardson, 115 Miss. 169, 76 So. 136, in which the Court said that, "the rule with us, as will appear from examination of the cases from this Court hereinafter cited, is that when adjoining lots owned by different persons are on a different level, so that there will be a natural flow of rainwater in a diffused state from the higher to the lower level, the owner of the lower lot may fend the water therefrom provided he does so for proper objects and exercises reasonable care to prevent unnecessary injury to the higher lot." As stated by the Court in its opinion in that case, the rule thus stated is based upon and is simply a concrete application of the maxim that, "One must so use his own as to not unnecessarily injure others." The Court in that case further said: "A corollary to this rule necessarily is, that where two methods of disposing of such water are available to the owner of the lower lot, each equally efficacious and neither requiring an unreasonably greater expense than the other, one of which will damage the adjoining property and the other will not, the latter must be adopted by the owner of the lower lot in fending the water therefrom." See also Steed v. Kimbrough, 197 Miss. 430, 19 So. 2d 925.

We find no reversible error in the record and the decree of the lower court is affirmed.

Affirmed.

*McGehee, C.J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.