487 So.2d 798 (1986)
MISSISSIPPI STATE HIGHWAY COMMISSION
v.
Bobby Jack WOOD and Virginia F. Wood.
No. 55466.
Supreme Court of Mississippi.
April 23, 1986.
*799 Lowry M. Lomax, Moore, Maples & Lomax, Pascagoula, for appellant.
Richard W. Hamilton, Fielding L. Wright, Wright & Hamilton, Pascagoula, for appellees.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
The Mississippi State Highway Department sought a mandatory injunction to require Bobby Jack Wood and wife, Virginia F. Wood, to deepen a ditch for drainage purposes along Mississippi Highway 63 in Jackson County, Mississippi. Alternatively, the Mississippi State Highway Department sought a mandatory injunction to allow the Department to hire a contractor to remedy the drainage problem at the cost of Mr. and Mrs. Wood.
The Chancery Court of Jackson County found that Wood had granted an easement to the Mississippi State Highway Department across his property for drainage purposes. The chancellor then ordered the Mississippi State Highway Department to correct the drainage in the ditch in question in the suit, and further ordered Wood to correct the culvert under his driveway. From this ruling, the Department appeals and assigns as error:
I. The lower Court erred in not granting the Mississippi State Highway Department a mandatory injunction requiring the Appellees to rectify the conditions complained of; and
II. The lower Court erred in granting the Mississippi State Highway Department an easement across the Appellees' property and ordering the Mississippi State Highway Commission to perform public work on private property.
The Wood property was purchased by them in 1974. It lies west of Mississippi highway 63. In 1974, the highway was a two-lane road. Robin Parker owns the land east of Mississippi highway 63 almost directly across from Wood. Robin Parker road runs perpendicular to Mississippi highway 63 and intersects it.
Parker testified that before 1980, when construction began to make highway 63 a four-lane road, water flowed west down Robin Parker road through culverts under highway 63 and into a drainage ditch which ran across the Wood property.
Exhibit P-2 is attached to this opinion for clarity's sake. Reference to it will be made from time to time as necessary.
Parker said that after the construction began Wood filled in ditch "C", (see exhibit). As a result, a four-inch rain now will cover Robin Parker road with six to eight inches of water, and the ditch running north and south on the east side of highway 63 fills with water. Parker claimed that the land east of highway 63 is lower than the land west of highway 63. However, documentary evidence contradicts this assertion.
Wood himself testified that ditch "C" had been cut by the Highway Department at some time prior to Wood's purchase of the land. In September, 1980, Wood spoke with Richard Turner and Horace Deaton of the Mississippi Highway Department about moving ditch "C". Wood thought one of his children might want to build a house where ditch "C" drained, so he requested *800 the Department that he be allowed to divert the drainage to the northern line of his property.
Wood wanted to grant the Department a right of way and let them cut the new ditch, but the Department declined on the grounds that they could not come on private property to do this type work. Wood then said he would cut the new ditch (ditch "I", see Exhibit), if the Department would divert their new drainage pipes to coincide with the new ditch. Wood claims the Department agreed to this, so he filled in ditch "C" and cut ditch "I", but the Department did not alter the new drainage. Wood was given no dimensions from the Department about ditch "I", so in October or November of 1980, he cut this new ditch to the same depth as older ditch "C". Two weeks later work started on highway 63.
Richard Turner, an engineer with the Department, said that he did not give Wood dimensions on the new ditch "I" because Wood had said that he would not dig the ditch. Turner also stated that he did not move the culvert to alter the drainage to coincide with new ditch "I" but waited until the fall of 1982 for Wood to cut the new ditch "I".
This testimony is shadowed by the letter of February 26, 1981, from Horace Deaton to Wood, which states in part:
Last fall Mr. R.E. Turner and I met with you, on your property, to discuss an alteration in the drainage across your property. This alteration was to fill in the existing ditch and cut a new ditch along your north property line. Mr. Turner informed you that the State was not authorized to do this type of work on private property, however we would alter the alignment of the proposed structure to match the new ditch that you cut. He also cautioned you not to block the drainage of the two (2) existing culverts under the present roadway.
Since that time you have made the above-mentioned improvements to your property. In making these improvements, you failed to cut the new ditch deep enough. It should be lowered two (2) feet to facilitate drainage of the two existing culverts. I discussed this with you last December, and informed you of the problem that you have caused, and that this could not be permitted to continue. As of this date this problem still exists and this is to inform you that this blockage of the drainage facilities is causing damage to State property, has caused extra work for the contractor for this project, and will cause a delay in the completion of this project if this condition is not corrected.
Wood did not deepen ditch "I" after he got the Deaton letter because he wanted to see what the Department did before he paid for any more work.
Wood also claimed that the contractor working for the Department filled in ditch "C" up to the Wood land line, and ditch "I" up to the junctions of points "B" and "I" (see Exhibit). Wood said the contractor also dumped fill dirt on culvert "D" which obstructed the water flow from "E-1" and "E-2" (see Exhibit).
Turner's opinion, however, was that ditch "I" must be wider and 1 foot deeper. Turner also said Wood's culvert under his driveway was part of the drainage problem. Wood was granted a permit for a driveway, and the permit specified a 30-inch culvert. Wood not only did not sign and return the permit to the Department, but installed a 24-inch culvert, rather than the required 30-inch.
The chancellor found that the Highway Department acquired property from Wood in order to build two new lanes west of highway 63, that they voiced no objection to the relocation of the drainage ditch, and that they would realign the drainage under all four lanes of highway 63 to empty into the new drainage ditch. The chancellor stated that this agreement was affirmed in the letter. The chancellor found that when Wood filled in ditch "C" and dug ditch "I" he granted the Highway Department an easement across his property for drainage purposes. The chancellor then ordered the Highway Department to correct the drainage in ditch "I" and for Wood to correct *801 the culvert in his driveway. From this ruling, the Highway Department appeals.

DID THE LOWER COURT ERR IN NOT GRANTING THE HIGHWAY DEPARTMENT A MANDATORY INJUNCTION REQUIRING THE APPELLEES TO RECTIFY THE CONDITIONS COMPLAINED OF?
Both assignments of error will be taken together. The position of Wood, as it was in the lower court, is that the drainage problem was created by the Highway Department and that the Highway Department is in a better position to correct the problem.
Wood argues two points: (1) that judgments of a chancery court have conclusive force and effect in the absence of manifest error, and (2) that since the Highway Department may acquire an easement by eminent domain then it may acquire an easement by grant.
This case represents the effort of the Highway Department and a citizen to peacefully co-exist which went awry and arrived in this Court primarily because of a lack of communication between the Highway Department and Wood. Turner and Deaton claim that after their initial conference with Wood, they thought that he was not going to cut ditch "I". Wood, however, claims that the Highway Department knew he was going to cut ditch "I", and that the letter from Deaton to him supports Wood's position.
The letter was written on February 26, 1981, which is approximately three to three-and-a-half months after Wood dug ditch "I" and the Highway Department began construction on highway 63. Although the letter asked Wood to deepen ditch "I", he did not do this because he had established grass in the ditch to take care of erosion and "had gone to a lot of trouble and effort to fix it up."
Furthermore, the Highway Department gave Wood "no indication or instructions as to what type of ditch or how much water would be coming down through there when they reconstructed it. In addition, Wood dug "I" and upon reaching point "B" of the right of way turned an "L" back towards ditch "C". Wood carried ditch "I" all the way to the part of ditch "C" that was on the Highway Department's right of way. Again, Wood stated that the contractor for the Highway Department filled in that portion of ditch "I" and ditch "C" on the right of way.
There was some testimony dealing with dry ramps. At the time Wood dug ditch "I", the ditch on the west side of highway 63 drained for approximately 100 to 150 feet north of Wood. A crossing for a driveway without a culvert  i.e., dry ramp  stopped the drainage. The drainage situation for the west ditch of highway 63 south of ditch "I" was 600 feet to Wood's driveway.
Since the Highway Department has begun construction and dug out the dry ramps, replacing them with culverts, the ditch south of ditch "I" drains for approximately 1800 feet which triples the flow of water into ditch "I".
One of the main problems presented is that the Highway Department never gave Wood any dimensions for ditch "I", and never realigned their culvert ("D") to coincide with ditch "I".
Under the second assignment of error of the Department, they argue that the chancellor erred in granting the easement, because a public body cannot do any type of work on private property.
Some public bodies can do work on private property, as is reflected by Mississippi Code Annotated § 65-7-63 (1972), which states in part, "the board of supervisors shall have power, whenever necessary, to drain water off the public roads through and over the adjacent lands... ."
Also Mississippi Code Annotated § 65-1-49 (1972), allows for the "conveyance or assignment of easements for highway purposes... ." Therefore, while Wood did not convey by instrument to the Highway Department an easement, this could have been done.
*802 Mississippi Code Annotated § 65-1-65 (Supp. 1985), provides in pertinent part, "It shall be the duty of the State Highway Commission to have the State Highway Department maintain all highways which have been or which may be hereafter taken over by the State Highway Department for maintenance in such a way as to afford convenient, comfortable, and economic use therefor by the public at all times."
It, therefore, appears that the Highway Department may go upon private land to perform public work if the work is necessary for the operation and maintenance of highways.
The ultimate problem presented by this case is: Who had the duty to correct the drainage problem? The chancellor answered that question by granting the Highway Department an easement onto the Wood property in order to deepen ditch "I"?
The crux of the question is whether the Highway Department agreed to allow Wood to construct the new ditch. If the Highway Department did not enter into that agreement and Wood can place the Department in this position without notice, then landowners throughout the state would be free to alter drainage ditches, which if altered and did not provide adequate drainage, the Highway Department could end up responsible for the reconstruction of the altered ditches.
However, if the Highway Department did agree to allow Wood to construct ditch "I", then they bear the responsibility for the new ditch, since they did not turn their drainage pipes toward ditch "I" and gave Wood no dimensions for the new ditch. Further, Wood had no objection to the water draining across his property, he merely wanted the drainage to take effect at a different place.
Though the testimony disputes the agreement, the chancellor found, through the testimony and the letter from the Highway Department, that the parties had agreed that Wood could construct ditch "I", and as stated numerous times before and recently in the case of Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985), "We have no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court."
The Highway Department hangs its hat on numerous cases dealing with the drainage of surface waters from higher to lower land. Holman v. Richardson, 115 Miss. 169, 76 So. 136 (1917), dealt with this issue. There the two parties owned adjoining lots, one of which had a higher elevation than the other. The lower-lying land owner, who was the appellant, began to erect a solid brick wall which would have prevented the water from flowing across her lot. The appellee filed an injunction to prevent the erection of the wall. This Court stated the rule dealing with this question in the following manner:
[W]hen adjoining lots owned by different persons are on a different level, so that there will be a natural flow of rainwater in a diffused state from the higher to the lower level, the owner of the lower lot may fend the water therefrom, provided he does so for proper objects and exercises reasonable care to prevent unnecessary injury to the higher lot.
115 Miss. at 179, 76 So. at 137.
Because the appellant had alternative means to fend the water from her land without inflicting damage upon the appellee, this Court held that she could not prevent the water from crossing her land.
In Steed v. Kimbrough, 197 Miss. 430 19 So.2d 925 (1944), the lay of the appellant's land was slightly higher than that of the appellees. There the appellees dug a drainage ditch across their property to allow water to drain into a highway ditch. The appellant later dug ditches that emptied into the appellees' ditch but he did not widen or deepen the appellees' ditch. The ditches dug by the appellant increased the water flow to the extent that some pooling of water resulted on the appellees' land.
The appellant took the position that it was the appellee's duty to enlarge their *803 own ditch. This Court stated three rules in regards to surface waters. They are:
(1) When no improvements have been made upon the contiguous upper land and it remains in its natural state, the right is in the owner thereof that the diffused surface waters thereon shall flow therefrom upon and into the contiguous lower land.
(2) The owner of the lower land has the right upon receiving the upper diffused waters to take such steps and to use such means as he may elect to carry the water away from his lower land so long as in so doing he does not use any of the upper land or so impede the flow as to cause it to back up or accumulate upon the upper land to any greater extent than it would have accumulated under natural conditions.
(3) The owner of the upper land does not have the right to collect his surface waters into an artificial channel or channels and then discharge it or allow it to be discharged upon the lower land at a greater volume or in a more concentrated flow than would have resulted had the natural conditions been left undisturbed, from which it follows that when by alterations made by the upper owner in natural conditions the result would be to cast upon the lower owner the water in a greater volume or in a more concentrated flow, the upper owner by means of his own and on his own land must take care of the excess, or must do so in cooperation with the lower owner.
197 Miss. at 436, 19 So.2d at 926. This Court ruled in favor of the appellees upon the basis of number (3) as quoted above.
In Hall v. Wood, 443 So.2d 834 (Miss. 1983), speaking through Justice Robertson, this Court tackled the confused state of the law dealing with water and drainage cases. A reasonable use test was imposed to determine conflicts regarding water drainage.
The rationale of the reasonable use test is explained when the Court states:
The owner of unimproved upper lands may allow diffused surface waters to drain from his lands unimpeded in their natural state even though lower landowners are affected. Payne v. Touchstone, 372 So.2d 1277, 1279 (Miss. 1979)... . An upper landowner may increase the flow of water via drainage incident to the reasonable development of his property even though it does some damage to the lower landowner. Homes, Inc. v. Anderson, 235 So.2d 680, 682-683 (Miss. 1970); [cites omitted]... .
From the vantage point of the owner of lower lands, the law is complementary. In diverting waters from his lands, any landowner must use reasonable care to prevent unnecessary injury to adjoining landowners. Holman v. Richardson, 115 Miss. 169, 179, 76 So. 136, 137 (1917); ... Numerous cases have held that upper landowners may not by artificial means discharge waters in greater quantities to the detriment of lower landowners. Steed v. Kimbrough, 197 Miss. 430, 436, 19 So.2d 925, 926 (Miss. 1944); ....
... .
The careful reader will note that the principles stated are not wholly consistent one with the other. Neither logical nor peaceful coexistence is possible unless one emphasizes before each such principles the qualifier "generally speaking" or "in the absence of equitable considerations to the contrary". The reciprocal equal maximum freedom of use/equal maximum freedom from interference principle, considered against the backdrop of the natural conditions of the land and water's obedience to the laws of physics, are always our touchstone.
443 So.2d at 839-40. See also, footnote 1, 443 So.2d at 840.
Therefore, it is apparent that the Highway Department could increase the flow of water by, among other things, substituting culverts for dry ramps, if in fact this was a reasonable step in improving and/or reconstructing highway 63.
The Highway Department did not move their culverts to coincide with ditch "I", nor did they give Wood the dimensions for ditch "I". If, as the chancellor found, *804 Wood, by his acts granted the Highway Department an easement, that Department would be responsible for correcting ditch "I".
As the chancellor found that the Highway Department knew that Wood was going to construct ditch "I", it follows that there was no wrongdoing on the part of Wood. Wood simply, by the agreement of the parties, filled in that part of ditch "C" that was on his land, and dug ditch "I" to the depth of ditch "C".
The chancellor found, "that when Wood filled in the old drainage ditch and dug a new ditch, ... he granted to the Highway Department an easement across his property for drainage purposes."
Neither party squarely addresses the question of whether the chancellor erred in granting the easement. The Highway Department argues only that it may not go upon private land to do public work. Wood argues that the Highway Department has the power to acquire easements by eminent domain, therefore it may acquire an easement by grant.
It is well established in our law that an easement may be created by grant, implication, or prescription. Logan v. McGee, 320 So.2d 792 (Miss. 1975).
Hutcheson, et al. v. Sumrall, et ux, 220 Miss. 834, 840, 72 So.2d 225, 227 (1954), points out, "That an implied easement must be continuous, apparent, permanent and necessary... . A use is apparent when it may be discovered upon reasonable inspection."
The case of Fourth Davis Island Land Co. v. Parker, 469 So.2d 516 (Miss. 1985), dealt with the question of implied easements. It should be borne in mind that, while the normal situation would involve a party claiming an easement, the Highway Department in this case did not ask for an easement, nor does it claim one.
In Fourth Davis, the chancellor found, relying on Bonelli Brothers v. Blakemore, 66 Miss. 136, 5 So. 228 (1888), that strict necessity must be shown in order to create an implied easement. This Court found that in some situations necessity is not required to create an implied easement. The Court said:
A close reading of Bonelli reveals that the Court distinguished between ways of necessity, which require strict necessity for their creation and implied easements of things not strictly necessary, but highly convenient or essential to the full enjoyment of the land. 66 Miss. at 143, 5 So. at 230. The Bonelli Court states the principle governing ways of necessity thus:
If one sells to another a tract of land surrounded by other lands of the grantor, a right-of-way across such other land is a necessity to the enjoyment of the land granted and is implied from the grant made.
... .
The Bonelli court's recognition that there may be implied grants of things not strictly necessary but highly convenient demonstrates that when the easement is not in the form of a way of necessity, strict necessity is not required... . Since the easement sought by Fourth Davis is not a necessity, it follows that the chancellor should not have held Fourth Davis to the burden of proving strict necessity but instead reasonable necessity.
469 So.2d at 520-21.
Since we are not dealing with a way of necessity, the question becomes whether it was "reasonably necessary" for the Highway Department to have an easement for ditch "I", in order to maintain highway 63. The answer to that question is in the affirmative. As stated in Sumrall v. United Gas Pipeline, 232 Miss. 141, 97 So.2d 914 (1957), "The right of the pipeline owner or operator to use the land across which his pipe extends includes the right to exercise all the incidents necessary for the full enjoyment of that easement, one of which incidents is ready accessibility to the line for maintenance and repair...." 232 Miss. at 147, 97 So.2d at 916.
The chancellor was not manifestly wrong in finding that there was an agreement *805 between the Woods and the Highway Department. He committed no error when he refused to grant the mandatory injunction. His use of an implied easement is the appropriate remedy under the circumstances of this case. This becomes apparent when one contemplates the question of whose responsibility it would be to correct a drainage problem caused by ditch "I" twenty years from now  the land owners' or the Highway Department's?
For the reasons above stated, we find the assignments of error to be without merit and the decision of the Chancery Court of Jackson County, Mississippi, is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.
*806